OPINION
In May 1995, Franklin County Children Services ("FCCS") filed complaints in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, alleging abuse, neglect and dependency on behalf of Carla Richardson's two minor children, Shawn Ellis and Kimberly Davis, who have different biological fathers. The complaints resulted from sexual abuse of the children by a boarder in their home, and Ms. Richardson's failure to protect them from the abuse. The offender was ultimately convicted of rape and incarcerated.
In June 1995, an adjudicatory hearing was conducted before a juvenile court magistrate. The parties proceeded uncontested on the abuse complaint, and the complaints alleging neglect and dependency were dismissed. In July 1995, the magistrate issued a report in which he recommended that the court find the children to be abused and, as a result, that the court award temporary custody to FCCS. The trial judge rendered a decision adopting the magistrate's report and recommendation. The parties also entered into an agreed-upon case plan for possible reunification. Following reviews in February and August 1996 to evaluate Ms. Richardson's compliance with the case plan, the magistrate extended temporary custody to FCCS.
In February 1997, FCCS filed a petition seeking permanent court commitment ("PCC") of both children. The hearings on this motion occurred on various dates from March 4, 1998 through August 17, 1998. When the PCC hearings commenced, Kimberly was eleven years old, and Shawn was thirteen years old.
On October 2, 1998, the magistrate issued a report in which he recommended that the court award PCC of the children to FCCS.
On October 16, 1998, counsel for James Davis, the biological father of Kimberly, filed timely objections to the magistrate's report. Counsel for Ms. Richardson did not file objections; however, the trial court allowed newly-appointed counsel to argue on Ms. Richardson's behalf at the January 1999 objections hearing.
On May 28, 1999, the trial court rendered a lengthy decision in which it ultimately overruled the objections to the magistrate's report. Pursuant to an entry journalized the same day, the trial court adopted the magistrate's findings and recommendationsin toto.
Carla Richardson (hereinafter "appellant") has timely appealed, assigning four errors for our consideration:
Assignment of Error 1[:]
 Carla Richardson was denied effective assistance of counsel. Said counsel's ineffectiveness deprived Ms. Richardson of her right to a fair trial as it relates to her state and federal constitutional rights to retain custody of her children.
Assignment of Error 2[:]
 The court commits reversible error by allowing continuous hearsay regarding alleged occurrences of abuse that bear upon the ultimate issue as to whether or not Carla Richardson should be permanently deprived of her rights and responsibilities pertaining to her children.
Assignment of Error 3[:]
 There was insufficient evidence to prove by the clear and convincing standard that Carla Richardson's children could not be placed with her within a reasonable time and that it was in the best interest of the children to be permanently removed from their mother's care. The decision of the magistrate was also against the manifest weight of the evidence.
Assignment of Error 4[:]
 Franklin County Children Services failed to exercise due diligence or employ its best efforts in drafting and executing its case plan for the reunification of Carla Richardson and her children, as required by state statutory and by state case law and statutes thereby requiring a reversal and remand in this case.
James Davis has not appealed. FCCS and the guardian adlitem have filed lengthy briefs urging affirmance on behalf of the children.
R.C. Chapter 2151 empowers a juvenile court to enter a PCC order for an abused and/or neglected child if the court determines that the child "cannot be placed with one or more of the child's parents within a reasonable time or should not be placed with either parent" if the court determines that PCC is in the "best interest of the child." R.C. 2151.35.3(A)(4). See, also, R.C. 2151.41.4(B)(1).
Pursuant to R.C. 2151.41.4(D), in determining the "best interest of a child," the trial court must consider "all relevant factors, including, but not limited to, the following:"
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives * * * and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
See In the Matter of Dwaun Williamson (Feb. 17, 2000), Franklin App. No. 99AP-440, unreported, citing In re William S. (1996),75 Ohio St.3d 95, 99.
In determining whether a child cannot be placed with either parent "within a reasonable period or should not be placed with the parents," the court must consider "all relevant evidence." R.C. 2151.41.4(E). Pursuant to that section, the court shall enter a finding that the child cannot be placed with either parent "within a reasonable time or should not be placed with either parent," if it determines by clear and convincing evidence that "one or more of the following exists as to each of the child's parents[:]"
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, * * * physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section;
 (3) The parent committed any abuse * * * against the child, caused the child to suffer any neglect * * * or allowed the child to suffer any neglect * * * between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect;
 (10) The parent has committed abuse * * * against the child or caused or allowed the child to suffer neglect * * * and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety;
* * *
(12) Any other factor the court considers relevant.
In reviewing the trial court's determinations in this case, we are mindful of the statutory mandate that the provisions of R.C. Chapter 2151 "shall be liberally interpreted and construed so as to effectuate * * * [its] purposes," which include providing for the "care, protection, and mental and physical development of children." R.C. 2151.01(A).
Because the second, third and fourth assignments of error collectively require a recitation of the facts adduced at trial, we address them first.
The magistrate's findings of fact, adopted by the trial court in toto, include the following. As indicated above, the children were initially removed from the home because they were being sexually abused by a boarder, who was ultimately convicted and incarcerated. Appellant did not believe her children when they told her about the abuse and she let the boarder remain in the home for some six weeks after the children's removal. When the children were removed, the home was in "deplorable and filthy" condition. Domestic violence and alleged "satanic occult practices" were commonplace. Appellant was suffering from some mental and emotional problems. Mr. Davis, who no longer resided in the home, had serious alcohol and drug problems and was periodically absent from the family. (Decision at 6.)
The initial case plan required appellant to undergo psychological testing. Dr. Douglas Pawlarczyk, a clinical psychologist, examined appellant and diagnosed her with an anxiety disorder, and a mixed borderline, avoidant, and self-defeating personality disorder. The latter disorder is a "long-term characteristic of her personality that affects her level of functioning." Another psychologist evaluated appellant in May 1995 and reached similar conclusions. By the time of trial, Dr. Pawlarczyk testified that he would have serious concerns regarding appellant's ability to provide consistent and appropriate care for the children and her ability to protect them from future abuse. He testified that there had been little improvement since the first assessment and that appellant's chronic problems would require long-term therapy lasting longer than one year. (Id., 6-7, 14.)
Appellant's case plan included substantial counseling to improve her emotional and mental health, and to appreciate her children's needs. In addition to the psychological assessments, appellant saw six different counselors during the pendency of the proceedings. After being in counseling for over three years, appellant continued to deny what happened to her children and claimed an inability to remember the abuse. There was even testimony that appellant could not recall taking blood and hair from the children as part of satanic rituals. (Id. at 7.)
When the children mentioned incidents of abuse during appellant's visitation with them, she either denied it or, again, claimed no memory of it. The caseworker assigned to this case, Dawn Guerriere, opined that appellant had been unable to accept her responsibility for her role in the children's abuse. At the time of trial, the two-year program appellant was in was going to take another year to complete. She had not completed the part of the plan requiring her to improve her emotional and mental health. Additionally, she had not "gained much insight into the significant needs of her abused children." (Id., 7-8).
Another objective of the case plan required "positive interaction" with the children. Although she did visit them regularly, she was unable to interact positively with them. She still continued to deny that abuse occurred or failed to remember any abuse. According to testimony, appellant had a history of being very "passive" with her children, even though she was warned that the boarder had been molesting them. At one point, she claimed that she allowed him to stay because she was afraid of and intimidated by him. (Id. at 8.)
Appellant's husband, Dwayne Richardson, who was also involved in the case plan, did not positively interact with the children either. Instead, he became "agitated," acted "inappropriately" and was asked to leave several times. However, there was testimony that Mr. Richardson interacted more with the children than appellant did. According to Ms. Guerriere, appellant just "sits there" during visits. (Id.)
Debra Tehrani, a counselor who treated the family since April 1995, also testified that appellant did not participate during visits when Mr. Richardson was there. Ms. Tehrani ultimately concluded that appellant does not support her children and neither understands the trauma they suffered nor their many needs. After three and one-half years, insufficient progress was made in order for unsupervised visits to be allowed. There was ample testimony that appellant did not substantially accomplish the case plan requirement of "positive interaction" with the children. (Id., 8-9.)
Another objective of the case plan required appellant to obtain "appropriate housing," which she never accomplished. Both Ms. Guerriere and Ms. Tehrani testified that the homes in which appellant lived were "filthy," "deplorable," had a "terrible stench" from animal feces and urine, and were unsafe due to significant disrepair. (Id. at 9.)
Both Ms. Guerriere and Ms. Tehrani testified Mr. Davis similarly failed to comply with the objectives of the case plan, which included psychological testing, counseling, and drug and alcohol assessment and screening. (Id., 11-12.)
The trial court, quoting the magistrate who conducted the trial, ultimately agreed with the magistrate's conclusion:
 "The problems with this family are so numerous, so severe and so ingrained that even full compliance with services may not have rectified things adequately. However, nothing close to substantial compliance has happened." (Id. at 18.)
Turning to appellant's second assignment of error, she argues that the trial court committed reversible error by allowing admission of "continuous hearsay" evidence. The challenged statements include remarks made by Ms. Tehrani and Ms. Guerriere regarding certain diagnoses of the children's mental and emotional problems, including post-traumatic stress disorder and attention deficit disorder. No objections to these statements were lodged by trial counsel; thus, absent a showing of plain error, we may deem these issues as waived. Goldfuss v. Davidson (1997), 79 Ohio St.3d 116,121. Notwithstanding the waiver, however, the statements regarding the children's mental health were harmless. Most of the testimony was given in the context of providing an historical account of the case and as foundation for the actions taken by the respective witnesses in their involvement with the family.
Given the state of this record, as outlined above, we cannot conclude that admission of the statements was prejudicial to appellant, much less plain error. There was overwhelming evidence to establish the real issue at hand; the children could and should not be returned to their parents, and PCC was in their best interests. The same conclusion would result absent the hearsay evidence
The second assignment of error is overruled.
The third assignment of error challenges the weight of the evidence. For purposes of appeal, our review is limited to determining whether the trial court's decision was supported by clear and convincing evidence.
Given the delineation of the evidence set forth above, the trial court's decision to grant PCC was supported by sufficient evidence. The record reflects more than ample evidence upon which the trial court could base its determination that the children could not be placed with their parents "within a reasonable time" and that PCC was in the best interests of these children. The trial court exhaustively examined the record and properly undertook the requisite analysis, applying each applicable statutory factor in detail.
The third assignment of error is overruled.
Appellant's fourth assignment of error essentially challenges the trial court's determination that FCCS exercised its "best efforts," as required by statute, to reunify the children with their mother.
The record does not support appellant's contention that FCCS failed to exercise its best efforts. In fact, the record demonstrates the contrary, as expressly noted by the trial court in its decision. FCCS worked closely and diligently with the family for over three and one-half years. Unfortunately, appellant did not avail herself of the options available to her and took only minimal steps to attempt to remedy the situation by meeting the requirements of the case plan. Under the circumstances presented here, the trial court properly concluded that FCCS exercised its best efforts.
The fourth assignment is overruled.
Finally, by her first assignment of error, appellant contends that her trial counsel provided ineffective assistance on four separate grounds. First, appellant argues that counsel failed to challenge the jurisdiction of the trial court when FCCS failed to file a timely request for the new PCC disposition. She also claims ineffectiveness in counsel's failure to comply with Juv.R. 40 by not filing objections to the magistrate's report. She further argues that her counsel failed to seek a court-appointed psychologist to assess her for purposes of the PCC hearing. Finally, she argues that counsel's failure to object to purported hearsay evidence amounted to ineffectiveness. For the reasons that follow, appellant has failed to demonstrate ineffective assistance of trial counsel.
A showing of ineffective assistance of counsel requires a well-established two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation. Second, prejudice to the client must be demonstrated. Strickland v. Washington (1984), 466 U.S. 668. Prejudice from deficient representation "sufficient to justify reversal * * * exists only where the result of the trial was unreliable or the proceeding fundamentally unfair" because of counsel's deficient performance. State v. Carter (1995), 72 Ohio St.3d 545,558.
Appellant's claim of ineffectiveness due to counsel's failure to challenge the juvenile court's jurisdiction to impose the new PCC disposition is meritless. Pursuant to R.C. 2151.35.3(F), that version in effect at the applicable time, a temporary custody order issued under that section "shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care," unless the agency that has custody files an R.C. 2151.41.5 motion seeking a one-year extension of the temporary custody or another disposition under that provision.
In In re Young Children (1996), 76 Ohio St.3d 632, the Supreme Court of Ohio held that under circumstances such as those presented here, the juvenile court does not lose jurisdiction to impose a new disposition. Specifically, the court held, at the syllabus, that "[t]he passing of the statutory time period (`sunset date') pursuant to R.C. 2151.35.3 does not divest juvenile courts of jurisdiction to enter dispositional orders." (Emphasis added.) Accordingly, trial counsel's motion seeking dismissal on those grounds would have been properly overruled.
Appellant's argument that trial counsel failed to file objections to the magistrate's report and recommendation is valid only to the extent that no such objections were timely filed. However, as indicated infra, the trial court expressly permitted new counsel to argue on appellant's behalf at the hearing on objections filed by the father. Further, the court expressly stated in its entry that the analysis employed to resolve the father's objections "clearly addresses the issues brought up by" appellant. (Decision at 2-3.) Therefore, no prejudice to appellant occurred.
Appellant next claims ineffective assistance based upon counsel's failure to request that the trial court appoint a psychologist to assess her for purposes of the PCC hearing. As indicated above, a psychologist testified at trial. Appellant has not demonstrated any prejudice resulting from the lack of another assessment. She has not pointed to anything in the record which suggests that another assessment might have yielded different results from the psychological evidence already introduced. Indeed, notwithstanding the speculative nature of the issue, the decision not to seek another psychological opinion may very well have been the product of sound trial strategy.
Finally, appellant contends that trial counsel's failure to object to purported hearsay testimony amounted to ineffectiveness. Appellant raised identical issues under her second assignment of error, which we have already overruled.
Given the state of this record, we cannot find that any of counsel's acts or omissions, either individually or cumulatively, amounted to prejudicial error. As indicated above in our dispositions of the other assignments of error, the evidence was overwhelmingly sufficient to sustain the trial court's determination that PCC was appropriate; therefore, appellant has failed to demonstrate that any isolated deficiencies on the part of trial counsel amounted to prejudicial error.
The first assignment of error is overruled.
Having overruled the assignments of error, the judgment of the trial court is affirmed.
Judgment affirmed.
BRYANT, J., and BOWMAN, P.J., concur.