OPINION
{¶ 1} Donald Thorington, Sr., and Judy Bowers are pursuing direct appeals of an order of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which terminated their parental rights in their children Antonio, Donald, Dyjon, and Passion Bowers, and granted permanent custody ("permanent court commitment" or "PCC") to Franklin County Children Services ("FCCS"). As discussed at length below, the primary reason underlying the trial court's decision to terminate parental rights and grant PCC was the consistent pattern of substance abuse/chemical dependency by both parents, with attendant issues directly related to their drug problems.
{¶ 2} Donald Thorington, Sr., assigns four errors for our consideration:
{¶ 3} "Assignment of Error I:
{¶ 4} "The trial court erred when it failed to consider the wishes of the children in the manner provided by the law.
{¶ 5} "Assignment of Error II:
{¶ 6} "The trial court erred because FCCS failed to prove its case by clear and convincing evidence.
{¶ 7} "Assignment of Error III:
{¶ 8} "Trial counsel's ineffective assistance prejudiced appellant Thorington.
{¶ 9} "Assignment of Error IV:
{¶ 10} "The lower court erred when it granted FCCS'[s] motion for permanent custody."
{¶ 11} Judy Bowers assigns five errors, some of which overlap Mr. Thorington's assigned errors:
{¶ 12} "FIRST ASSIGNMENT OF ERROR:
{¶ 13} "The trial court was without jurisdiction to order permanent commitment, because the temporary order of custody to FCCS was not properly extended as required by O.R.C. Section 2151.353.
{¶ 14} "SECOND ASSIGNMENT OF ERROR:
{¶ 15} "The trial court erred to the prejudice of appellant Bowers by admitting the testimony of Ms. Jessica Adams, Caseworker, on the issue of the Adoptability of the Bowers children, or on substance abuse, because her testimony on these issues was unreliable, unscientific and inadmissible under Daubert [v. Merrill Dow Pharmaceuticals, Inc. (1993), 509 U.S. 579].
{¶ 16} "THIRD ASSIGNMENT OF ERROR:
{¶ 17} "The trial court erred to the prejudice of appellant Bowers when it failed properly to consider 1) the wishes of the children or 2) the interrelationship between the children and their parents and between the children and each other, as required by O.R.C. Section2151.414(D)(1) and (2).
{¶ 18} "FOURTH ASSIGNMENT OF ERROR:
{¶ 19} "The trial court erred to the prejudice of appellant Bowers by granting permanent custody to appellee FCCS, because FCCS failed to prove its case by clear and convincing evidence, and because there was insufficient evidence to support the trial court's decision.
{¶ 20} "FIFTH ASSIGNMENT OF ERROR:
{¶ 21} "Trial counsel's ineffective assistance prejudiced appellant Bowers."
{¶ 22} FCCS and the guardian ad litem have filed lengthy briefs urging affirmance of the trial court's decision.
{¶ 23} In August 1999, Judy Bowers gave birth to Passion Bowers. Both mother and daughter tested positive for cocaine, leading to a referral to FCCS. At the time, Judy Bowers and Donald Thorington, Sr., were still husband and wife, but they were living in separate residences. Apparently, Passion's three older siblings were living with Mr. Thorington. Nevertheless, FCCS sought temporary custody of all four children, evidently because Mr. Thorington struggled with his own drug abuse problems.
{¶ 24} In granting permanent custody of the four children to FCCS, the trial judge ultimately found that both parents suffer from chemical dependency which "is so severe and long-term that they are unable to provide an adequate and permanent home for the children now or even one year from now." (Decision at 9.) The trial court made this set of findings after the children had been in the custody of FCCS for two and one-half years. Additional facts are set forth below in our discussion of both parties' relevant assignments of error.
{¶ 25} Because Ms. Bowers' first assignment of error raises a jurisdictional issue, we address it first.
{¶ 26} By her first assignment of error, appellant Bowers, relying upon R.C. 2151.353, argues that the two and one-half years' delay between FCCS first obtaining temporary custody and the hearing to determine permanent custody deprived the court below of the ability, or "jurisdiction" in the language of the purported error, to address permanent custody issues. We disagree.
{¶ 27} The Ohio Supreme Court decision in In re Young Children (1996), 76 Ohio St.3d 632, allows a juvenile court to exercise continuing jurisdiction when the parents have not remedied the underlying conditions which led to the granting of temporary custody. Clearly, the drug abuse problems of the parents and the instability arising from those problems had been ongoing up to and through the date of trial. Pursuant to In re Young Children, the trial court had jurisdiction to enter the orders it did. The syllabus to that case reads:
{¶ 28} "The passing of the statutory time period ("sunset date") pursuant to R.C. 2151.353(F) does not divest juvenile courts of jurisdiction to enter dispositional orders." (Emphasis added.)" The court further stated:
{¶ 29} "This holding allows the juvenile court to assess each situation on its merits and does not mandate the return of children to a situation from which they originally needed protection solely because the agency charged with their care missed a filing deadline. Thus, we hold that when the sunset date has passed without a filing pursuant to R.C.2151.415 and the problems that led to the original grant of temporary custody have not been resolved or sufficiently mitigated, courts have the discretion to make a dispositional order in the best interests of the child. * * *" Id. at 638. See, also, In re Shawn Ellis (Mar. 9, 2000), Franklin App. No. 99AP-725; Holloway v. Clermont Cty. Dept. of Human Serv. (1997), 80 Ohio St.3d 128.
{¶ 30} Appellant Bowers' first assignment of error is overruled.
{¶ 31} Ms. Bowers' third assignment of error and Mr. Thorington's first assignment of error are interrelated and will be addressed together. In essence, these assignments of error challenge the trial court's finding with regard to the wishes of the children and/or the interaction and interrelationship of the children with their parents and each other.
{¶ 32} Ms. Bowers and Mr. Thorington raise several issues in these assignments of error. The first issue addresses the effect of the guardian ad litem's failure to submit his report prior to or at the final hearing as required under R.C. 2151.414(C). R.C. 2151.414(C) states that "[a] written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the [permanent custody] hearing * * *." The record reflects that the guardian ad litem did not submit his report at or before the time of the final hearing. (Tr. 235-236.) This court has stated, however, that while it is error to fail to submit a report as required under R.C. 2151.414(C), such error is waived if there is no objection. In re Conner (Nov. 28, 2000), Franklin App. No. 99AP-1466. Here, there was no objection to the failure of the guardian ad litem to submit his report by the time of the PCC hearing. Hence, any error has been waived.
{¶ 33} The parents next take issue with the failure of the guardian ad litem to testify at the final hearing. There is nothing in the Revised Code or case law that requires a guardian ad litem to testify as a witness and be cross-examined at a final hearing regarding permanent custody. In the case at bar, the guardian ad litem did make a final statement at the end of the hearing. (Tr. 236-241.) There was nothing erroneous about this action, and we note that no party objected to this action.
{¶ 34} Ms. Bowers and Mr. Thorington also contend that the guardian ad litem's report, which was submitted after the final hearing, was insufficient as it merely set forth the procedural history of the case and contained no information regarding what was in the best interest of the children. Again, there is nothing in the statutes or case law regarding the contents of a guardian ad litem report. Mr. Thorington's reliance on this court's opinion in In re Williams (Mar. 20, 2001), Franklin App. No. 00AP-973 is misplaced, as that decision turned on the complete lack of reliable evidence about the child's wishes. As will be addressed below, it has not been shown that the trial court failed to properly consider the evidence with regard to the wishes of the children, regardless of the source of such information. (See Decision at 12.) Again, the guardian ad litem spoke at length at the final hearing with regard to his opinion and recommendations. The trial court sufficiently addressed the wishes of the children in his decision.
{¶ 35} Indeed, the trial court sufficiently performed its function under R.C. 2151.414(D)(1) and (2) as to these factors. R.C.2151.414(D) states, in pertinent part:
{¶ 36} "(D) In determining the best interest of a child at a [final custody] hearing * * *, the court shall consider all relevant factors, including, but not limited to, the following:
{¶ 37} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and * * * any other persons who may significantly affect the child;
{¶ 38} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child[.]"
{¶ 39} The trial court's decision clearly shows that the trial judge considered the evidence as to these factors. Specifically, the trial judge found:
{¶ 40} "* * *[T]he evidence demonstrates that [the children] still love their parents and that the parents still love them. Furthermore, that all four seem to be bonded to both parents.
{¶ 41} "The fact is however, that these children have lived together in one foster home for the past two and one-half years. Thus, there is also a strong bond between them and their foster parents. The Court finds that Donald and Passion have a stronger bond with their foster parents than with their biological parents. Passion refers to her foster parents as `Mom' and `Dad'. Donald is strongly bonded to his foster father, Gary." (Decision at 11-12.)
{¶ 42} The trial court then went on to discuss the children's activities and school life and noted that they were assimilated in the community of the foster parents but that there was no evidence of interaction with the home, school or community of their biological parents. Further, the trial court found evidence that the children "have all expressed their wishes to remain in foster care and not return to their biological parents." Id. at 12.
{¶ 43} For all of the reasons discussed above, there was no error with regard to issues involving the wishes of the children or the factor involving interaction/ interrelationships as set forth in R.C.2151.414(D)(1) and (2). Accordingly, Ms. Bowers' third assignment of error and Mr. Thorington's first assignment of error are overruled.
{¶ 44} Ms. Bowers' second assignment of error asserts that the trial court erred in admitting the testimony of Jessica Adams, the caseworker, as to the adoptability of the children and the substance abuse of the parents. Ms. Bowers argues that Ms. Adams' testimony on these topics was inadmissible under Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993), 509 U.S. 579, 113 S.Ct. 2786. In essence, Ms. Bowers is asserting that Ms. Adams was not qualified as an expert to testify on these topics.
{¶ 45} Initially, we note that Daubert is inapplicable to the case at bar. Daubert dealt with a Federal Rule of Evidence, namely Rule 702, which at the time addressed testimony of an expert with scientific, technical or other specialized knowledge. The case at bar does not involve such issues. Rather, Ms. Adams' testimony consisted of evidence stemming from her involvement as the case worker assigned to the Bowers/Thorington family. Accordingly, she was giving opinion testimony under Ohio Evid.R. 701 based upon her observations and experience, and such testimony was directly relevant to the issues in the case. This court has found such testimony to be proper. See In re Jenkins (June 28, 2001), Franklin App. No. 00AP-1411.
{¶ 46} As to the weight to be given such testimony, we address such issue below. However, as to the issue of admissibility of Ms. Adams' testimony on these topics, there was no error. Accordingly, Ms. Bowers' second assignment of error is overruled.
{¶ 47} Ms. Bowers' fourth assignment of error and Mr. Thorington's second and fourth assignments of error assert, in essence, that FCCS failed to prove its case by clear and convincing evidence. Permanent custody judgments supported by some competent, credible evidence going to all the essential elements will not be reversed by a reviewing court. Id., citing In re Brofford (1992), 83 Ohio App.3d 869, 876-877. The findings of the trial court are presumed to be correct since the trier of fact is in the best position to weigh the evidence and evaluate the testimony. Id. at 876. However, we note that FCCS must prove its case by clear and convincing evidence. Clear and convincing evidence requires proof that produces in the trier of fact a firm belief or conviction as to the facts which are sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368.
{¶ 48} R.C. 2151.414 addresses the necessary determinations for granting a motion for permanent custody. The portions relevant to the case at bar are as follows:
{¶ 49} "(B)(1) * * * [T]he court may grant permanent custody of a child to a movant if the court determines at the [final] hearing * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
{¶ 50} "(a) The child is not abandoned * * *, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
{¶ 51} "* * *
{¶ 52} "(d) The child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
{¶ 53} "* * *
{¶ 54} "(D) In determining the best interest of a child at a [final] hearing * * *, the court shall consider all relevant factors, including, but not limited to, the following:
{¶ 55} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
{¶ 56} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
{¶ 57} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
{¶ 58} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
{¶ 59} "* * *
{¶ 60} "(E) In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
{¶ 61} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
{¶ 62} "(2) * * * [C]hemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the [final] hearing;
{¶ 63} "* * *
{¶ 64} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
{¶ 65} "* * *
{¶ 66} "(16) Any other factor the court considers relevant."
{¶ 67} The court's findings with regard to the statutory considerations/factors were as follows:
{¶ 68} "The Court finds from the evidence that, at the time of Passion's birth on August 22, 1999, both Passion and her mother, Judy Bowers, tested positive for cocaine. Also, at the time of Passion's birth, that the mother did now know the whereabouts of the other children. The children were then taken into temporary custody by Franklin County Children Services on or about August 26, 1999. They have been in the continuous custody of the agency since that time. This is a total time of over thirty (30) months or two and one-half (2½) years as of the date of this hearing. This evidence is not contradicted or disputed. The Court finds no evidence, however, which indicates that these children are orphaned or abandoned.
{¶ 69} "The children cannot be placed with either parent within a reasonable time or should not be placed with either parent (O.R.C.2151.414(B)(2) and (E)).
{¶ 70} "* * * The court has considered all the factors as set forth in the statute and applied them to the facts of this case.
{¶ 71} "In the case-at-bar, the Court finds from clear and convincing evidence that both parents have failed continuously and repeatedly to remedy the conditions causing the children to be placed in the custody of [FCCS]. In other words, the Court finds that both parents have failed to satisfactorily complete the case plan in this case despite the provision by [FCCS] of numerous resources and their use of reasonable efforts.
{¶ 72} "To the parents' credit, they have completed parenting classes and anger management by the father. With regard to that part of the case plan that calls for the father to complete the sex offender or STOP assessment, the Court finds that [FCCS] has failed to prove that this was a reasonable or necessary provision in this case plan or that the father has failed to complete it.
{¶ 73} "The Court does find, however, that the parents have failed to successfully complete the following provisions of their case plan:
{¶ 74} "The case plan, for both parents, required them to complete a drug and alcohol assessment, follow through with recommended treatment, demonstrate sobriety and submit to random urine screens for drugs and alcohol. The mother has chronically abused drugs and alcohol for many years * * *. She testified that she last drank beer one year ago and last used marijuana and cocaine six to eight months ago. She admits that she is drug addict. In the fall of 1999 she was admitted to Maryhaven, but was terminated unsuccessfully in March, 2000. Between November, 2000 and January, 2001 she was referred to Crittenden Family Services, but she terminated the program unsuccessfully. She has only recently started again on or about October, 2001 at Crittenden and is now regularly attending group and individual sessions there. Her recent engagement in this process does not equal a successful completion of this provision of the case plan. In addition, she must demonstrate that she can maintain sobriety and give regular and continuous urine screen[s]. The Court finds that she has not given drug screens to [FCCS] on a regular or continuous basis. * * * The Court does not find [her renal failure and kidney disease and dialysis] to be a credible excuse.
{¶ 75} "With regard to the father, the Court finds that he has also chronically abused alcohol and drugs during the course of this case plan. He was an outpatient at Maryhaven in 2000 and successfully completed the program, but relapsed in September, 2001. He also tested positive for cocaine in June, 2001. On September 26, 2001 he initiated an assessment process at Crittenden Family Services, but was placed on a waiting list. He enrolled at Talbot Hall in January, 2002 and then again in Maryhaven in January, 2002. Also, the evidence shows that the father has failed to give drug screens as required by the case plan. * * *
{¶ 76} "Based upon both parents' patterns of failure to successfully complete these programs and follow through, the Court reasonably concludes that there is no reason to believe that their current enrollment in drug and alcohol treatment programs will result in their successful completion within the reasonable future. Nor does the Court believe that even if they do complete these programs that they won't return to their old pattern of drug and alcohol abuse.
{¶ 77} "The Court finds that both parents have failed to complete the drug and alcohol provisions of their case plan." (Decision at 4-8.)
{¶ 78} The trial court then went on to find that both parents suffer from chemical dependency that is "so severe and long-term that they are unable to provide an adequate and permanent home for the children now or even one year from now [and that the] parents' drug and alcohol abuse * * * is the main factor that has prevented them from providing a safe, stable environment for their children * * * [and] that it is highly unlikely that they will ever be able to provide a safe, stable environment for their children within the reasonable future." Id. at 9-10.
{¶ 79} The trial court also found that Mr. Thorington had failed to obtain adequate housing as required by the case plan and that Ms. Bowers had failed to demonstrate that she could obtain and maintain adequate housing for the children over a reasonable period of time. Id. at 8-9. Further, the trial court found that neither parent had completed the requirement in the case plan to obtain employment and that neither could provide adequate food, clothing and shelter for the children presently or in the reasonable future. Id. at 9. In summary, the trial court concluded that neither parent had completed the "primary provisions" of their case plan and that they had failed to substantially remedy the conditions causing the children to be placed with FCCS. Id.
{¶ 80} The trial court found that the parents had demonstrated a lack of commitment toward the children by failing to support them or regularly visit. Id. at 10. The parents' visitation was "sporadic and irregular." Id. The trial court stated that the evidence demonstrated that neither parent had ever paid child support for the children over the past two and one-half years nor had they provided any other type of support such as buying clothing, food or other necessities. Id.
{¶ 81} The trial court then turned to the factors in R.C.2151.414(D) regarding the best interest of the children. The trial court stated that it had considered all the factors and had made its findings based on clear and convincing evidence. The trial court found under R.C. 2151.414(D)(1) that the children still loved their parents, that the parents still loved the children and that the children seemed bonded to both parents. However, the trial court found that the children had been living in one foster home for the past two and one-half years and that there was a "strong bond" between them and the foster parents. Id. at 11. The trial court found that the two youngest children had a stronger bond with their foster parents than with Mr. Thorington and Ms. Bowers. Id. at 11-12.
{¶ 82} The trial court then went on to discuss the children's activities, community life and school achievements. The trial court concluded that it was in their best interest to remain with their foster parents until they could be permanently placed. Id. at 12.
{¶ 83} As to the factor in R.C. 2151.414(D)(2), the trial court found evidence that the children had expressed their wishes to remain in foster care and not be returned to Mr. Thorington and Ms. Bowers. Id. The trial court noted that the guardian ad litem had expressed his opinion in closing statements that permanent custody be granted and that the children be given "closure and eventual adoption." Id.
{¶ 84} As to the factor in R.C. 2151.414(D)(3), the trial court found that Passion had never been in the legal or physical custody of either parent and that all the children had been in the temporary custody of FCCS for at least twelve of the last twenty-two months (indeed, they had been in continuous foster care for over two and one-half years). Id. at 12-13.
{¶ 85} As to R.C. 2151.414(D)(4), the trial court found that the children had endured a "long and tumultuous history of living with parents who have consistently abused drugs and alcohol, failed to maintain adequate housing and employment and who have demonstrated a lack of commitment to them. Their needs are obvious * * *." Id. at 13.
{¶ 86} The trial court did discuss the issue and evidence of adoptability. The trial court concluded that adoption either individually or as a sibling group was possible. Id. at 14. As the trial court aptly put it, "the issue is not the possibilities or probabilities of adoption in these cases, but rather whether these children are in need of a legally secure permanent placement * * *." Id. In conclusion, the trial court found that the children could not be returned to either parent now or in the "reasonable future" and that it was in their best interest that permanent custody be granted to FCCS. Id. at 15.
{¶ 87} The parents do not, in essence, dispute the essential facts. Rather, they take issue with the trial court's conclusions drawn therefrom. Mr. Thorington contends that he should not have been subject to the case plan because he did not cause the condition which triggered FCCS taking the children (i.e., Ms. Bowers' and Passion's positive tests for cocaine upon Passion's birth). However, the fact that Mr. Thorington was not directly involved with the triggering event is irrelevant to the determinations the trial court had to make upon a PCC motion. The statutory scheme laid out above must be followed by the court, and Mr. Thorington's compliance with the case plan was certainly relevant.
{¶ 88} Both parents assert that FCCS failed to show that they had not sufficiently complied with the case plan. However, the record contains ample evidence supporting the trial court's conclusion pursuant to R.C. 2151.414(E)(1) that they had failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the child's home (i.e., both parents' substance abuse problems). Accordingly and pursuant to the mandate in R.C. 2151.414(E), the trial court entered a finding that the children could not be placed with either parent within a reasonable time or should not be placed with either parent. Further, it is undisputed that the under R.C. 2151.414(B)(1)(d), the children had been in the temporary custody of FCCS for twelve or more months of a consecutive twenty-two month period after March 18, 1999.
{¶ 89} As to the best interest prong, there was clear and convincing evidence that it was in the best interest of the children to grant FCCS permanent custody. The trial court considered all the factors in R.C. 2151.414(D), and the evidence supports the trial court's findings as to each factor and any other relevant factor. The parents focus on the adoptability factor. However, the chances of the children being adopted as a sibling group is not a determinative factor. The evidence as a whole supports the trial court's conclusion that it was in the best interest of the children that permanent custody be granted to FCCS.
{¶ 90} For the reasons stated above, the trial court did not err in granting permanent custody to FCCS. Accordingly, Ms. Bowers' fourth and Mr. Thorington's second and fourth assignments of error are overruled.
{¶ 91} In their last assignments of error, the parents assert that they were denied the effective assistance of counsel. Ms. Bowers contends she was prejudiced by the cumulative effect of her trial counsel's failure to object to leading questions, failure to call witnesses on her behalf, failure to cross-examine witnesses and object to hearsay testimony regarding the children's wishes, and failure to object to Ms. Adams' testimony based on Daubert, supra. Mr. Thorington asserts that his counsel failed to oppose FCCS's motion for temporary custody, present corroborating witnesses regarding his attempts to combat his substance abuse problems, object to the failure of the guardian ad litem to timely submit his report, call the guardian ad litem as a witness, object to the lack of evidence from and testimony of the guardian ad litem, argue that Mr. Thorington could not remedy the condition which caused the removal of the children, and argue that the case plan requirements should not have been imposed upon Mr. Thorington.
{¶ 92} This court's decision in In re Hogle (June 27, 2000), Franklin App. No. 99AP-944, sets forth the test to be applied pursuant to Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052 when ineffective assistance of counsel is asserted. Thus, we quote at length from our opinion:
{¶ 93} "In order to prevail on a claim of ineffective assistance of counsel under Strickland, [the] appellants must show that `counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance.' State v. Reynolds (1998),80 Ohio St.3d 670, 674. `The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' Strickland, supra, at 686. Thus, a two-part test is necessary to examine such claims. First, appellants must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. State v. Keith (1997), 79 Ohio St.3d 514, 534. Second, appellant must show that, but for the counsel's errors, there is a reasonable probability that the results of the trial would be different. Id. `A reasonable probability is a probability sufficient to undermine the confidence in the outcome.' State v. Carpenter (1996), 116 Ohio App.3d 615, 622.
{¶ 94} "The burden of showing ineffective assistance of counsel is on the party asserting it. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel. State v. Carter (1995),72 Ohio St.3d 545, 558 * * *." In re Hogle at 12-13.
{¶ 95} In the case at bar, neither Ms. Bowers nor Mr. Thorington has shown that their counsels' performance fell below an objective standard of reasonableness and/or that prejudice arose from their counsels' performances. As to Mr. Thorington's arguments regarding FCCS's motion for temporary custody, this issue was irrelevant to the matters determined at the PCC hearing. Further, we have already addressed issues relating to Mr. Thorington's lack of involvement in the triggering event and the irrelevancy of that fact to the case plan and the final determinations made by the trial court. As to Ms. Adams' testimony, we determined above that her testimony was proper under Evid.R. 701.
{¶ 96} Ms. Bowers' and Mr. Thorington's remaining assertions go to evidentiary matters and the failure of counsel to present certain corroborating evidence. These matters go to strategy. Further, neither Ms. Bowers nor Mr. Thorington has shown this court, even if their counsel were objectively deficient in failing to, for example, object to leading questions and hearsay or to call certain witnesses, that but for such errors, there is a reasonable probability that the results would have been different. We simply cannot say that the conduct of Ms. Bowers' and Mr. Thorington's respective counsel was such that it so undermined the proper functioning of the adversarial process that the final hearing cannot be relied on as having produced a just result.
{¶ 97} Given the above, we determine that Ms. Bowers and Mr. Thorington have failed to show ineffective assistance of counsel. Accordingly, Ms. Bowers' fifth and Mr. Thorington's third assignment of error are overruled.
{¶ 98} In summary, all of Ms. Bowers' and Mr. Thorington's assignments of error are overruled. Accordingly, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
BRYANT and BOWMAN, JJ, concur.