[Cite as *In re S.E.*, 2019-Ohio-378.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE:

S.E.

JUDGES:
Hon. W. Scott Gwin, P.J
Hon. William B. Hoffman, J.
Hon. Craig R. Baldwin, J.

Case No. 2018-CA-0068

O P I N IO N

CHARACTER OF PROCEEDINGS:       Appeal from the Richland County Court of
                                Common Pleas, Juvenile Division, Case
                                No. 16-DEP-150

JUDGMENT:                       Affirmed

DATE OF JUDGMENT ENTRY:         February 5, 2019

APPEARANCES:

For Appellant-Mother

DARIN AVERY
105 Sturges Avenue
Mansfield, Ohio  44903

For Appellee/Richland County Children
Services

EDITH A. GILLILAND
RICHLAND COUNTY CHILD. SERVICES
731 Scholl Road
Mansfield, Ohio  44907

*Hoffman, J.*

{¶1} Appellant Victoria Chapman ("Mother") appeals the August 2, 2018 Judgment Entry entered by the Richland County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges, and responsibilities with respect to her minor child ("Child"), and granted permanent custody of Child to Appellee Richland County Children's Services Board ("RCCSB").

STATEMENT OF THE FACTS AND CASE

{¶2} Mother and Drew Elkins ("Father") are the biological parents of Child.[1] Mother and Father have never married. At all times relevant to this Appeal, Mother was legally married to Daniel Chapman with whom she had four children. Franklin County Children Services ("FCCS") removed the four Chapman children from Mother and Chapman's home in August, 2012, due to allegations of physical abuse. Mother and Chapman were identified as the perpetrators of the abuse with Mother ultimately being convicted of child endangering and placed on probation. After Mother violated the terms of her probation by failing to adequately cooperate or comply with FCCS, she served two months in jail. The Franklin County Juvenile Court terminated Mother's parental rights with respect to three of the four Chapman children on October 11, 2016. The fourth Chapman child was placed in the legal custody of parental relatives.

{¶3} Child was placed in the emergency shelter care of RCCSB on November 12, 2016, upon her release from the hospital following her birth. On November 14, 2016, RCCSB filed a complaint alleging Child was a dependent child. The complaint was based

---

[1] Father is not a party to this Appeal.

upon Mother and Father's homelessness as well as Mother having recently lost custody of her other children.

{¶4} Following an adjudicatory hearing on February 13, 2017, the trial court found Child to be dependent. The trial court commenced the dispositional hearing immediately following the conclusion of the adjudicatory hearing, however, Father objected and the matter was continued. The dispositional hearing was completed on March 6, 2017. Via Decision filed March 13, 2017, the magistrate ordered Child be placed in the temporary custody of RCCSB. The magistrate also ordered Mother and Father submit to full psychological and parenting evaluations, and sign all releases. Mother filed objections to the magistrate's decision, which the trial court dismissed via Judgment Entry filed April 4, 2017.

{¶5} The magistrate conducted a review hearing on April 5, 2017. Mother did not appear at the hearing. Attorney Sheryl Groff, counsel for Mother, advised the court Mother was "taking a break" from the case while she attended to her own physical and mental health concerns. Magistrate's April 13, 2017 Order at para. 4.

{¶6} On August 30, 2017, Father filed a motion requesting the case be transferred to Franklin County, Ohio, explaining he had relocated to that area. The motion came on for hearing on October 4, 2017. At the hearing, RCCSB advised the court neither Mother nor Father had made any progress on their respective case plans and, as such, a motion requesting permanent custody was imminent. The trial court, nonetheless, ordered RCCSB to investigate whether a transfer to Franklin County would result in a disruption of Child's foster placement. The trial court subsequently learned maintaining the current foster placement could not be guaranteed and; therefore, decided to move

forward with the resolution of the motion for permanent custody. In addition, neither the trial court nor RCCSB could verify whether either Mother or Father was residing in Franklin County.

{¶7} On October 23, 2017, RCCSB filed a motion for disposition seeking permanent custody of Child. The hearing on RCCSB's motion for disposition commenced on February 21, 2018. Although Mother was not present at the hearing, Attorney Groff appeared on her behalf. The magistrate had previously granted Mother's request to be excused from attending any of the proceedings in the matter due to the fact she suffers from post-traumatic stress syndrome.

{¶8} Prior to the commencement of the hearing, Attorney Groff orally moved for a continuance, arguing RCCSB's filing for permanent custody at the first annual review of the case was precipitous and Mother believed she should be given additional time to work on her case plan. The magistrate denied the continuance, noting Mother's failure to complete a similar case plan in the FCCS's cases involving the four Chapman children, despite having four years in which to do so, as well as Mother's non-compliance with the case plan in the instant matter over the course of a year.

{¶9} The evidence revealed, between March, and May, 2016, Father was arrested three times for domestic violence against Mother. Although all of the charges were eventually dismissed, the testimony of law enforcement officials who responded to the calls established these incidents were serious, actually occurred, and were perpetrated by Father. Inexplicably, at the adjudicatory hearing, Mother and Father both denied the incidents ever occurred. Mother stated Father had never been violent toward her or threatened violence against her. Mother also denied ever seeking safety from

Father at Catalyst Life Services, which is located near the RCCSB facility, during a visit with Child on November 28, 2016. Mother claimed she had never seen the crisis counselor before in her life despite having spent several hours with the professional. Mother explained she had entered the Catalyst facility to use the restroom, use the telephone, and inquire about counseling.

{¶10} Initially, Mother visited Child five days per week in order to nurse the newborn. However, Mother's visits were reduced in length and frequency due to Mother and Father's behaviors during visits which caused concerns for the safety of Child and RCCSB staff. Law enforcement officials responded to RCCSB on at least three occasions because of Parents' behaviors. Following a visit on January 10, 2017, Mother and Father were charged with trespassing, disorderly conduct, and obstructing official business.

{¶11} Mother's case plan required her to complete a mental health assessment as well as a full psychological evaluation and follow all recommendations; engage in parenting education; participate in domestic violence services; sign all releases relative to these services; and obtain and maintain stable housing. Mother had similar case plan requirements in the FCCS case involving the Chapman children, but failed to substantially comply therewith. No evidence was presented to establish Mother complied with any aspects of the case plan in the instant matter. Mother was not employed and did not receive social welfare benefits.

{¶12} On April 9, 2017, during a home visit, Mother presented her caseworker with a letter which she acknowledged having written herself and in which she detailed violent, coercive, and abusive behaviors by Father against her. Mother advised the caseworker she had ended her relationship with Father as of March 22, 2017. Within a

month of the home visit, Mother had resumed her relationship with Father and disengaged with RCCSB.

{¶13} During 2017, Mother visited Child on three occasions: January 10, 2017, sometime in mid-April/early May, 2017, and December 20, 2017. Thereafter, Mother was permitted to visit Child on Mondays and Wednesdays for two hours at FCCS's facility.[2] Mother attended one of the four scheduled Monday visits, but no called/no showed the other three. Of the seven scheduled Wednesday visits, Mother attended three, no called/no showed three others, and missed one due to lack of transportation despite being offered assistance with transportation.

{¶14} With respect to best interest, the evidence revealed Child was fifteen months old. She has been in the same foster home since leaving the hospital after her birth. Child is bonded with her foster parents and integrated into their home. Child's foster parents wish to adopt her if permanent custody is granted.

{¶15} Via Decision filed March 8, 2018, the magistrate recommended RCCSB be granted permanent custody of Child. The magistrate found RCCSB made reasonable efforts. The magistrate further found Child cannot and should not be placed with Mother or Father within a reasonable time. Mother filed objections to the magistrate's decision. Via Judgment Entry filed August 2, 2018, the trial court overruled Mother's objections, terminated Mother's parental rights, privileges, and responsibilities with respect to Child, and granted permanent custody of Child to RCCSB.

{¶16} It is from this judgment entry Mother appeals, raising the following assignments of error:

---

[2] RCCSB has arranged for the change of location to Franklin County.

I. THE TRIAL COURT ERRED IN REFUSING TO TRANSFER THE CASE TO FRANKLIN COUNTY, WHERE BOTH PARENTS RESIDED.

II. THE COURT ERRED IN HEARING RCCS' MOTION FOR PERMANENT CUSTODY BECAUSE RCCS FAILED TO TIMELY FILE ITS MOTION UNDER R.C. 2151.415(A).

III. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY HER COUNSEL'S FAILURE TO MOVE FOR DISMISSAL 90 DAYS AFTER THE FILING OF THE COMPLAINT.

{¶17} This case come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I

{¶18} In her first assignment of error, Mother maintains the trial court erred in refusing to transfer the case to Franklin County. Mother submits, given the gravity of the termination of parental rights, the difficulties Mother experienced with transportation to services and visits, and the difficulties RCCSB experienced in assisting Mother, the trial court abused its discretion in refusing to transfer the case.

{¶19} Juv. R. 11 provides for the transfer of proceedings as follows:

**(A) Residence in Another County; Transfer Optional.** If the child resides in a county of this state and the proceeding is commenced in a court of another county, that court, on its own motion or a motion of a party, may

transfer the proceeding to the county of the child's residence upon the filing of the complaint or after the adjudicatory or dispositional hearing for such further proceeding as required. The court of the child's residence shall then proceed as if the original complaint had been filed in that court. Transfer may also be made if the residence of the child changes.

**(B) Proceedings in Another County; Transfer Required.** The proceedings, other than a removal action, shall be so transferred if other proceedings involving the child are pending in the juvenile court of the county of the child's residence.

{¶20} Where a child is in the temporary custody of a county-based agency, the permanent custody proceeding must remain in the county regardless of the residence of the parents; Juv. R. 11 allows transfer only to the county of the child's residence. *In re K.G.,* 5th Dist. Holmes No. 13CA011, 2014–Ohio–266, ¶21, citing *In re Smith,* 64 Ohio App.3d 773, 776–77, 582 N.E.2d 1117, 1119 (1990).

{¶21} Herein, Child was in the temporary custody of RCCSB and resided in Richland County. A transfer to Franklin County could potentially disrupt Child's foster placement. Child was bonded with her foster parents and integrated into their home. In addition, RCCSB could not verify a Franklin County residence for Mother or Father. Neither Mother nor Father had complied with their case plan requirements during the year the matter was pending. There was nothing to suggest a transfer to Franklin County would encourage or improve their compliance.

**{¶22}** Because a trial court's paramount concern is the best interest of the child and the court should consider the totality of the circumstances affecting the best interest of the child, we find the trial court did not err in refusing to transfer the matter to Franklin County.

**{¶23}** Mother's first assignment of error is overruled.

II

**{¶24}** In her second assignment of error, Mother asserts the trial court erred in hearing RCCSB's motion for permanent custody as RCCSB failed to timely file the motion under R.C. 2151.415(A). Mother argues RCCSB's motion for permanent custody was untimely because it was not filed within 30 days prior to November 14, 2017, one year from the filing of the initial complaint.

**{¶25}** In *In re Young Children,* 76 Ohio St.3d 632, 1996-Ohio-45, the Ohio Supreme Court stated, "The passing of the statutory time period ('sunset date') pursuant to R.C. 2151.353(F) does not divest juvenile courts of jurisdiction to enter dispositional orders." *Id.* at syllabus. The *Young* Court reasoned, "because the court retains jurisdiction over the child, it may make further dispositional orders as it deems necessary to protect the child." *Id.* at 638. The Court held, "when the sunset date has passed without a filing pursuant to R.C. 2151.415 and the problems that led to the original grant of temporary custody have not been resolved or sufficiently mitigated, courts have the discretion to make a dispositional order in the best interests of the child." *Id.*

**{¶26}** In the case sub judice, the problems which led to the original grant of temporary custody had not been resolved by the time the trial court made its dispositional order. In accordance with *In re Young,* we find the trial court did not err in hearing

RCCSB's motion for permanent custody as the trial court retained continuing jurisdiction for further dispositional orders necessary for the protection of Child.

**{¶27}** Mother's second assignment of error is overruled.

III

**{¶28}** In her final assignment of error, Mother contends she was denied the effective assistance of counsel as a result of counsel's failure to seek dismissal of the complaint when the trial court conducted the dispositional hearing after the deadline set forth in R.C. 2151.35(B)(1).

**{¶29}** Because of the importance of cases involving the termination of parental rights, the due process and equal protection clauses of the United States and Ohio Constitution's guarantee indigent parents be provided with counsel and a transcript at public expense for appeals as of right. *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, paragraph two of the syllabus. Accordingly, the General Assembly has provided parents involved in permanent custody proceedings with the right to counsel, which will be appointed by the court if the parent is indigent. R.C. 2151.352. See, also, Juv.R. 4. The right to counsel includes the right to the effective assistance of counsel. *In re Wingo,* 143 Ohio App.3d 652, 666, 2001-Ohio-2477.

**{¶30}** "The two-part test for ineffective assistance of counsel used in criminal cases, announced in *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, applies in actions by the state to force the permanent, involuntary termination of parental rights. *Jones v. Lucas Cty. Children Services Bd.* (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471. A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an

objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland,* supra; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373." *In re: Utt Children,* Stark App. No. 2003CA00196, 2003-Ohio-4576.

{¶31} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley* at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a strong presumption exists counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

{¶32} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. Prejudice from defective representation sufficient to justify reversal exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. *State v. Carter,* 72 Ohio St.3d 545, 558, 1995-Ohio-104, citing *Lockhart v. Fretwell* (1993), 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180.

{¶33} Assuming, arguendo, trial counsel's performance fell below an objective standard of reasonable representation, we find Mother cannot satisfy the second prong of the *Strickland* test. The trial court commenced the dispositional hearing immediately following the adjudicatory hearing, but did not complete the hearing at Father's request for a continuance. The hearing was rescheduled within a reasonable time. Mother has

failed to demonstrate a reasonable probability the trial court would have granted the motion; therefore, cannot demonstrate prejudice.

{¶34} Mother's third assignment of error is overruled.

{¶35} The judgment of the Richland County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, J.

Gwin, P.J. and

Baldwin, J. concur