[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 632.]

IN RE  YOUNG CHILDREN.

IN RE BUNTING CHILDREN.

IN RE BROCK CHILDREN.

IN RE FARRAR ET AL.

[Cite as *In re Young Children*, 1996-Ohio-45.]

*Juvenile court—Passing of statutory time period pursuant to R.C. 2151.353(F) does not divest juvenile courts of jurisdiction to enter dispositional orders.*

(Nos. 95-941, 95-942, 95-1213, 95-1510, 95-1526 and 95-1688—Submitted April 30, 1996—Decided October 9, 1996.)

The passing of the statutory time period ("sunset date") pursuant to R.C. 2151.353 (F) does not divest juvenile courts of jurisdiction to enter dispositional orders.

APPEALS 94-CA-264 from and CERTIFIED by the Court of Appeals for Stark County, Nos. 94-CA-198, 94-CA-264 and 94-CA-227.

APPEAL from the Court of Appeals for Guernsey County, No. 94-CA-20.

———————————

YOUNG CHILDREN

{¶ 1} On September 21, 1992, the Stark County Department of Human Services ("SCDHS") filed complaint JU 80468 in the Stark County Juvenile Court alleging that Ronald and Dominic Young were dependent and/or neglected children.  On that day, the court placed Ronald in the temporary custody of SCDHS. SCDHS filed a new complaint, JU 81490, on January 8, 1993, based on the exact facts of complaint JU 80468, alleging that Ronald and Dominic were dependent and/or neglected children.  On January 13, 1993,  the court dismissed complaint JU 80468 and based on a finding of probable cause as to complaint JU 81490, granted temporary custody of Ronald and Dominic to SCDHS.

**{¶ 2}** SCDHS filed an amended complaint on February 8, 1993 alleging that Ronald had been sexually abused. Following a dispositional hearing held on April 7, 1993, the juvenile court granted temporary custody of Ronald and Dominic to SCDHS based upon their parents' prior stipulation that Ronald was an abused child and that Dominic was a dependent child. SCDHS filed a motion to extend temporary custody on December 8, 1993. The court granted the motion on January 3, 1994 and extended temporary custody until July 8, 1994.

**{¶ 3}** On March 28, 1994, SCDHS filed a motion for permanent custody of Ronald and Dominic. On May 5, 1994, Luella Young, the mother of Ronald and Dominic, filed a motion to dismiss, claiming that the court lacked jurisdiction because the children had been removed on September 21, 1992 and SCDHS had not filed a motion to extend temporary custody prior to the sunset date prescribed by R.C. 2151.415. The court overruled the motion finding that it had continuing jurisdiction.

**{¶ 4}** Upon the filing of an objection, the court held a hearing on July 5, 1994. At that time, the court determined that it retained jurisdiction over Dominic and that it had lost jurisdiction over Ronald on September 21, 1993, pursuant to *In re White* (Feb. 14, 1994), Stark App. No. CA-9461, unreported. Therefore, the court dismissed Ronald's case. The court of appeals affirmed this dismissal.

**{¶ 5}** The cause is now before this court pursuant to the allowance of a discretionary appeal (case No. 95-941), and finding its judgment in conflict with decisions in the Second, Third, Sixth, Ninth and Twelfth Appellate Districts, the court of appeals entered an order certifying a conflict. This court determined that a conflict exists (case No. 95-942).

BUNTING CHILDREN

**{¶ 6}** Upon their parents' stipulation to probable cause to the allegation that they were dependent and/or neglected, the Stark County Juvenile Court placed Shasta Bunting and Megan Bunting in the temporary custody of SCDHS on February 24, 1992. SCDHS filed a first amended complaint, JU 78383, on March 19, 1992 alleging that the children lived in unsafe housing conditions and were poorly supervised, in addition to being dependent and/or neglected. On May 26, 1992, SCDHS filed a new complaint, JU 79440, alleging the same facts as complaint JU 78383. At that time the court issued an order granting temporary custody to SCDHS. The first amended complaint, JU 78383, was dismissed on June 4, 1992 because the juvenile court could not hear the complaint within the ninety-day time period prescribed in R.C. 2151.35(B)(1).

**{¶ 7}** Complaint JU 79440 reached adjudication on August 20, 1992 at which time the court awarded custody to SCDHS. SCDHS filed a motion for permanent custody on February 9, 1993 and amended it on June 1, 1993 as a motion to extend temporary custody. The court granted the latter motion upon agreement of the parents.

**{¶ 8}** SCDHS filed a motion for permanent custody on October 25, 1993. Ramona Martin ( the mother of Shasta and Megan) relinquished her parental rights on April 18, 1994. The court granted permanent custody of Shasta and Megan to SCDHS on August 1, 1994. On May 15, 1995, the court of appeals reversed the grant of custody based on its finding that the trial court lacked subject matter jurisdiction pursuant to *In re White, supra.*

**{¶ 9}** The cause is now before this court pursuant to the allowance of a discretionary appeal. (Case No. 95-1213.)

FARRAR CHILDREN

**{¶ 10}** On September 27, 1991, Guernsey County Children Services Board ("GCCSB") filed a complaint in the Guernsey County Juvenile Court alleging that

Julie Farrar, Ron Farrar, Jr., and Amanda Welker were neglected and/or dependent children. On October 18, 1991, the court granted a predispositional interim custody order and granted protective supervision to GCCSB. On November 21, 1991, the court adjudicated the children to be neglected. At that time, the court returned custody of Ron and Amanda to their mother. Julie had been and remained in the custody of Norma Berg.

{¶ 11} On January 29, 1992, the court granted a predispositional order of temporary custody of Ron to Charlie and Lisa Berg and of Amanda to Ed Welker, her maternal grandfather. On February 25, 1992, the court found Ron and Amanda to be dependent and neglected children. On September 22, 1992, because of problems in both Berg households, the court awarded temporary custody of Ron and Julie to GCCSB. The court also awarded legal custody of Amanda to Ed Welker.

{¶ 12} On May 10, 1993, GCCSB filed a motion to modify the temporary commitment to permanent commitment based on the parents' lack of compliance with the case plan. On February 9, 1994, after several continuances, the court granted permanent custody of Julie and Ron to GCCSB. On June 23, 1995, the court of appeals reversed, based on its finding that the trial court lacked subject matter jurisdiction pursuant to *In re White, supra,* and dismissed the trial court's grant of permanent custody to GCCSB.

{¶ 13} The cause is now before this court pursuant to the allowance of a discretionary appeal. (Case No. 95-1526.)

BROCK CHILDREN

{¶ 14} On December 26, 1991, SCDHS filed complaint JU 77685 in the Stark County Juvenile Court alleging that Keisha Brock, Sade Brock, and David Brock were neglected children. Following an adjudicatory hearing on January 24, 1992, the court granted temporary custody of Keisha, Sade, and David to SCDHS. The court placed the children with their mother. SCDHS filed a new complaint, JU

4

81572, on January 14, 1993, alleging that the children were neglected and/or dependent. At an emergency shelter hearing on January 15, 1993, the court awarded temporary custody of the Brock children to SCDHS.

{¶ 15} On February 9, 1993, the court held an adjudicatory hearing on complaint JU 81572 at which the children were found dependent. At a dispositional hearing that same day, the court placed the children in the temporary custody of SCDHS. Complaint JU 77685 was dismissed on February 18, 1993.

{¶ 16} SCDHS filed a motion for permanent custody on December 10, 1993. This motion was not heard until May 9, 1994 because of difficulty serving the parents and the parents' failure to appear at the first scheduled hearing. The court granted permanent custody of the children to SCDHS on July 6, 1994. On June 29, 1995, the court of appeals reversed and remanded with orders to dismiss the case pursuant to *In re White, supra.*

{¶ 17} The cause is now before this court pursuant to the allowance of a discretionary appeal (case No. 95-1510), and, finding its judgment in conflict with decisions in the Second, Third, Sixth, Ninth, and Twelfth Appellate Districts, the court of appeals entered an order certifying a conflict. This court determined that a conflict exists (case No. 95-1688).

_____

*Darlene Odar*, for appellee Louella Young, mother of Ronald Young.

*Donald Ramsayer*, for appellee Ronald Young, Sr., father of Ronald Young.

*John Mackey*, for appellee Paul Bunting, father of the Bunting Children.

*Charles E. McKnight*, for appellee Debbie Farrar, mother of the Farrar children.

*Oberholtzer & Oberholtzer* and *Mattheuw W. Oberholtzer*, for appellee Vivian Brock, mother of the Brock children.

*Linda Shields-Stiefel*, for appellee David Brock, father of the Brock children.

*Paula M. Sawyers* and *Edith M. Hough*, for appellant Stark County Department of Human Services.

*Josephine E. Hayes*, for appellant Guernsey County Children Services Board.

*Kathleen O. Tatarsky*, for *amicus curiae* Stark County Children's Services and Advisory Council, in case No. 95-941.

———————————

**PFEIFER, J.**

{¶ 18} We are asked in these consolidated cases to consider whether a juvenile court loses jurisdiction to enter dispositional orders upon expiration of the statutory time period (the "sunset date") pursuant to R.C. 2151.353 (F). The certified question is: "Are the provisions of R.C. 2151.415(D) jurisdictional in nature, such that a trial court loses jurisdiction to enter custody orders after expiration of the statutory time period?" We answer the question in the negative and for the reasons that follow, we find that a juvenile court does not lose jurisdiction of a matter upon the passing of the sunset date and that a judge may enter an order of disposition pursuant to R.C. 2151.415 (A) after the sunset date when the problems that led to the original temporary custody order remain unresolved.

{¶ 19} R.C. 2151.353 (F) states in pertinent part: "Any temporary custody order issued pursuant to division (A) of this section shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that, upon the filing of a motion pursuant to section 2151.415 of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section."

{¶ 20} R.C. 2151.415 (A) states in pertinent part: "Any public children services agency or private child placing agency that has been given temporary custody of a child pursuant to section 2151.353 of the Revised Code, not later than

thirty days prior to the earlier of the date for the termination of the custody order pursuant to division (F) of section 2151.353 of the Revised Code or the date set at the dispositional hearing for the hearing to be held pursuant to this section, shall file a motion with the court that issued the order of disposition requesting that any of the following orders of disposition of the child be issued by the court:

"(1)  An order that the child be returned to his home and the custody of his parents, guardian, or custodian without any restrictions;

"(2)  An order for protective supervision;

"(3)  An order that the child be placed in the legal custody of a relative or other interested individual;

"(4)  An order permanently terminating the parental rights of the child's parents;

"(5)  An order that the child be placed in long-term foster care;

"(6)  In accordance with division (D) of this section, an order for the extension of temporary custody."

{¶ 21} Temporary custody is terminated upon the passing of the sunset date, when no motion is filed pursuant to R.C. 2151.415 (A).  However, the issue before us, what happens to the court's *jurisdiction* upon the passing of the sunset date, is not clear.  Accordingly, we look elsewhere in the Revised Code to determine the *jurisdiction* of a court in situations like the ones before us.  In doing so, we are guided by R.C. 2151.01(A), which states in pertinent part that Chapter 2151 of the Revised Code is to be "liberally interpreted and construed so as to effectuate *** the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code."  See, also, Kurtz & Giannelli, Ohio Juvenile Law (2 Ed. 1989) 167, Section 13.01.

{¶ 22} R.C. 2151.353 (E)(1) provides in pertinent part that "[t]he court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to division (A) of this section *** until the child attains the age of eighteen

*** or the child is adopted." It seems abundantly clear that this provision was intended to ensure that a child's welfare would always be subject to court review. That is, given that a child, by virtue of being before the court pursuant to R.C. Chapter 2151, was at risk of some harm, the General Assembly provided for the child's safety and welfare by ensuring that the juvenile court would retain jurisdiction over the child through the age of majority. R.C. Chapter 2151 places no limitation on this general jurisdiction.

{¶ 23} At the risk of oversimplifying the issue before us, we believe that R.C. 2151.353 is dispositive. Accordingly, we hold that the passing of the sunset date pursuant to R.C. 2151.353(F) does not divest juvenile courts of jurisdiction to enter dispositional orders.

{¶ 24} That juvenile courts have continuing jurisdiction does not mean that public children services agencies or private child-placing agencies can ignore the mandates of the statute and rely on the court to save them from their own failures or oversights. Neither does it mean that courts can grant dispositional orders indiscriminately. The obligation to file a motion thirty days prior to the sunset date is not vitiated and the failure to file is not harmless error. See *Endsley v. Endsley* (1993), 89 Ohio App.3d 306, 624 N.E.2d 270. Accordingly, although the court has continuing jurisdiction, temporary custody terminates when the sunset date passes without a filing pursuant to R.C. 2151.415 (A). However, because the court retains jurisdiction over the child, it may make further dispositional orders as it deems necessary to protect the child. We believe the General Assembly granted continuing jurisdiction to the courts for just this reason.

{¶ 25} This holding allows the juvenile court to assess each situation on its merits and does not mandate the return of children to a situation from which they originally needed protection solely because the agency charged with their care missed a filing deadline. Thus, we hold that when the sunset date has passed without a filing pursuant to R.C. 2151.415 and the problems that led to the original

grant of temporary custody have not been resolved or sufficiently mitigated, courts have the discretion to make a dispositional order in the best interests of the child. Where the original problems have been resolved or sufficiently mitigated, courts may not make further dispositional orders based on the original complaint.

{¶ 26} We now address the issue of refiling. Presently, some agencies are resorting, as the facts of the cases before us suggest, to filing new complaints, alleging the same facts as in a previous complaint, to prevent the passing of the sunset date. The agencies do so with the best of intentions in order to protect children. Nevertheless the practice unnecessarily clutters the courts with essentially redundant casework. Our holding should eliminate the perceived necessity for these redundant filings.

{¶ 27} Further, when a new complaint is filed based on past facts discovered subsequent to the original complaint or subsequent facts, we find that the new complaint established its own sunset date because it is not a mere refiling. This sunset date does not affect and is not controlled by previously filed complaints or previously established sunset dates.

{¶ 28} We now turn to the application of our holding to the specific facts before us.

YOUNG CHILDREN

{¶ 29} We reverse the court's dismissal of Ronald Young's case. Though the sunset date had passed as to the original complaint filed on September 21, 1992, the complaint filed on February 8, 1993 alleging sexual abuse established its own sunset date because it was based on facts learned subsequent to the filing of the original complaint. Thus, the motion for an extension of temporary custody filed on December 8, 1993 was filed prior to the sunset date.

{¶ 30} However, the motion for permanent custody was not filed prior to the sunset date as required by R.C. 2151.415 (B). Accordingly, temporary custody was terminated on July 8, 1994, the date through which the court properly extended

temporary custody. Even so, the juvenile court retains jurisdiction over the matter pursuant to our holding today.

{¶ 31} Accordingly, we reverse the dismissal of this case and remand to the trial court for further proceedings to determine whether the problems that led to the filing of the February 8, 1993 complaint had been resolved or sufficiently mitigated as of July 8, 1994, when the extended temporary custody order would have otherwise terminated. If these problems had been resolved or mitigated, the court should terminate the temporary custody order and release the child to his mother. If they had not, the court has discretion to make a further dispositional order pursuant to R.C. 2151.415 and our holding above.

BUNTING CHILDREN

{¶ 32} The motion for permanent custody of Shasta Bunting and Megan Bunting was filed on February 9, 1993, after the passing of the sunset date. Even so, the court retains jurisdiction over the matter pursuant to our holding today. Accordingly, we reverse the dismissal of this case and remand to the trial court for further proceedings to determine whether the problems that led Shasta and Megan to be taken into temporary custody had been resolved or sufficiently mitigated as of February 24, 1993, when the temporary custody order would have otherwise terminated. If these problems had been resolved or mitigated, the court should terminate the temporary custody order and release the children to their mother. If they had not, the court has discretion to make a further dispositional order pursuant to R.C. 2151.415 and our holding above.

FARRAR CHILDREN

{¶ 33} The temporary custody orders in this case terminated on September 27, 1992 because there was no filing pursuant to R.C. 2151.415 prior to the sunset date. Even so, the trial court retains jurisdiction over the matter pursuant to our holding today. Accordingly, we reverse the dismissal of this case and remand to the trial court for further proceedings consistent with this opinion to determine

whether the problems that led to the original grant of temporary custody had been resolved or sufficiently mitigated as of September 27, 1992 when the temporary custody order would have otherwise terminated. If these problems had been resolved or mitigated, the court should terminate the temporary custody order and release the children to their mother. If they had not, the court has discretion to make a further dispositional order pursuant to R.C. 2151.415 and our holding above.

## BROCK CHILDREN

{¶ 34} The original complaint in this case established a sunset date of December 26, 1992. A new complaint, alleging different facts was filed on January 14, 1993. This complaint established its own sunset date. The motion for permanent custody was filed prior to the sunset date established by the January 14, 1993 complaint. Accordingly, we reverse the dismissal of this case and remand to the trial court for further proceedings consistent with this opinion.

*Judgments reversed*

*and causes remanded.*

RESNICK, F.E. SWEENEY and STRATTON, JJ., concur.

MOYER, C.J., DOUGLAS and COOK, JJ., concur in the syllabus and concur in part and dissent in part in judgment.

_____

**COOK, J., concurring in the syllabus and concurring in part and dissenting in part in judgment.**

{¶ 35} Although I concur in the syllabus of the majority's opinion, my analysis differs and leads to different dispositions of the four cases.

{¶ 36} Like the majority, I believe that the passing of the sunset date found in R.C. 2151.353(F) does not divest the juvenile court of jurisdiction to enter a dispositional order. That division only causes an order of temporary custody to lapse. R.C. 2151.353(E)(1) continues jurisdiction in a juvenile court over any child for whom the court has issued a dispositional order until that child reaches the age

of majority. I believe that is as far as the majority needed to go to dispose of these cases.

{¶ 37} Instead, the majority conditions a court's ability to issue further dispositional orders on whether or not the problems leading to the filing of the original complaint exist as of the sunset date. This approach is not in the statutory scheme or in the case law and thus there is no basis for imposing such a condition.

{¶ 38} In three of the four cases presently before this court, the juvenile courts issued permanent custody orders. In the fourth case, the juvenile court refused to entertain a permanent custody motion on its conclusion that the passing of the sunset date had divested it of jurisdiction. Assuming that the permanent custody orders are supported by the appropriate considerations as they existed at the time of the permanent custody hearings, there is no reason to reverse those orders. The *Bunting, Farrar* and *Brock* courts' continuing jurisdiction authorized the issuance of permanent custody orders. R.C. 2151.415(E)(1). The *Young* court's continuing jurisdiction authorizes it to rule upon the permanent custody motion. *Id.*

{¶ 39} It is critical that we give effect to the statutory design for placement of children who are adjudicated abused, neglected or dependent. The statute places a burden on the court to keep tabs as a child progresses toward return to the family home or an alternative permanent living arrangement. It also limits the time that a child's future may be left in limbo. Nevertheless, a temporary order that is permitted to lapse under R.C. 2151.353(F) does not mandate the child's return to the family home. After an adjudication that the child is abused, neglected or dependent and the issuance of a dispositional order, all further placements must be court-ordered. If temporary custody is permitted to lapse, and a child's parents believe that they are entitled to have the child returned to the family home, they can file a motion pursuant to R.C. 2151.415(F), requesting the court to issue the appropriate order. None of the parties to this appeal exercised that option. The

juvenile courts' continuing jurisdiction now authorizes them to rule on the permanent custody motions.

**{¶ 40}** Accordingly, I would reverse *Bunting, Farrar* and *Brock* and return the cases to the appellate courts for review of the assignments of error which were found to be moot. I would reverse *Young* and remand the case to the trial court to conduct a hearing on the permanent custody motion.

**{¶ 41}** In addition, I also note my respectful disagreement with the majority's treatment of successive complaints concerning the same child. The majority concludes that where the latter complaint alleges new facts, or facts not disclosed in the original complaint, a new sunset date is given effect and the old one is erased. It is only when the original and new complaints are based on the same facts that the sunset date is calculated from the original complaint. Application of the statute in this manner thwarts the fundamental purpose behind the legislature's limitation upon grants of temporary custody.

**{¶ 42}** Orders of temporary custody are limited so that children do not linger in housing arrangements that were never intended to be permanent. The limitation is not so much for the benefit of the parent as it is for the benefit of the child. Evidence of this fact is supplied by R.C. 2151.415(D)(1), which conditions an extension of temporary custody on a demonstration by clear and convincing evidence that there has been significant progress on the child's case plan and that the child will be reunified with one of his parents within the period of extension. Moreover, children in temporary custody whose return to the family home is neither imminent nor desirable are to receive case plans designed to develop and implement an alternative permanent living arrangement. R.C. 2151.412(F)(1)(b)(ii).

**{¶ 43}** A second complaint based on new facts would tend to demonstrate that a parent is not making progress with the case plan and return to the family home is not imminent. Accordingly, it is no reason to justify prolonging temporary

custody. The same can be said for a complaint based on new allegations of past conduct. Nevertheless, that is the result under the majority opinion.

**{¶ 44}** In formulating the statutory scheme related to the placement of abused, neglected and dependent children, the legislature built in safeguards to ensure that children are not forgotten after being placed in temporary custody. A juvenile court is required to hold a review hearing one year after the earlier of the filing of a complaint or placement of the child into shelter care. R.C. 2151.415(B); 2151.417(C). Such hearing is to be scheduled upon completion of the court's dispositional hearing held pursuant to R.C. 2151.35. R.C. 2151.35(B)(3). Accordingly, a child's dispositional order should not be permitted to lapse.

**{¶ 45}** Because the trial courts below were confounded by the filing of amended and second complaints, timely action was not taken in making or extending the appropriate dispositional order. This confusion would be eliminated by construing R.C. 2151.353(F) to require calculation of the sunset date to run from the earlier date of the child's placement in shelter care or the filing of the original complaint. If later filed complaints are not permitted to reset the sunset date, the situation presented in the present case is unlikely to recur.

MOYER, C.J., and DOUGLAS, J., concur in the foregoing opinion.

———————————