OPINION *Page 2 
{¶ 1} On June 9, 1998, the Muskingum County Children's Services, filed a complaint, alleging Shelby Minton, born April 26, 1998, to be a dependent child. Mother of the child is appellant, Jackie Himes; father is Brian Minton. On July 22, 1998, Shelby was adjudicated a dependent child, and was to remain in the legal custody of her parents.
 {¶ 2} On November 12, 2004, appellee filed a complaint against the same parents, alleging Madison Minton, born September 4, 2004, to be a dependent child.
 {¶ 3} On March 21, 2005, appellee filed a complaint against the same parents, alleging Mariah Minton, born March 12, 2001, to be a dependent child. Appellee also filed a motion to modify the disposition of Shelby, from legal custody to the parents to temporary custody to appellee.
 {¶ 4} On April 4, 2005, Madison and Mariah were adjudicated dependent children, and were placed in appellee's temporary custody. Shelby's prior disposition was modified and she too was placed in appellee's temporary custody.
 {¶ 5} On February 23, 2006, appellee filed a motion to modify the prior dispositions of all three children, to one of permanent custody.
 {¶ 6} On May 25, 2006, the parents moved to remove the guardian ad litem and appoint a new guardian. The trial court denied this motion.
 {¶ 7} On August 24, 2006, the parents voluntarily consented to the permanent custody of Madison to appellee. Temporary custody for Shelby and Mariah was extended to allow the parents more time to complete the case plan. *Page 3 
 {¶ 8} On December 21, 2006, appellee once again filed a motion to modify the prior dispositions of Shelby and Mariah to one of permanent custody.
 {¶ 9} A hearing commenced on June 4, 2007. By judgment entry filed July 18, 2007, the trial court terminated the parents' parental rights, and granted permanent custody of Shelby and Mariah to appellee.
 {¶ 10} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 11} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING PERMANENT CUSTODY TO MUSKINGUM COUNTY CHILDREN'S SERVICES BEYOND THE `SUNSET DATE' SET FORTH BY R.C. § 2151.353 IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS."
 II {¶ 12} "THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTEREST OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 III {¶ 13} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY WHEN THERE WAS NOT CLEAR AND CONVINCING EVIDENCE FOR THE TRIAL COURT TO FIND THAT THE MINOR CHILDREN SHOULD NOT BE PLACED WITH APPELLANTS AND *Page 4 
THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN TO BE PLACED IN THE PERMANENT CUSTODY OF MUSKINGUM COUNTY CHILDREN'S SERVICES."
 IV {¶ 14} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ADMITTING DR. CAMPBELL'S EXPERT OPINION WHEN HER OPINION WAS LARGELY BASED UPON A METHOD THAT HAS NOT GAINED GENERAL ACCEPTANCE IN THE SCIENTIFIC COMMUNITY AND THEREFORE WAS CONSIDERED IN VIOLATION OF EVID.R. 702."
 V {¶ 15} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT CONSIDERING THE WISHES OF THE CHILDREN AS STATED TO THEIR ATTORNEY AS MANDATED BY R.C. § 2151.414(D)(2) AND THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT ADEQUATELY CONSIDERING THE CHILDREN'S BEST INTEREST AS MANDATED BY R.C. § 2151.414(D)."
 VI {¶ 16} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING APPELLANTS' MOTION TO REMOVE THE GUARDIAN AD LITEM."
 VII {¶ 17} "APPELLANTS WERE DENIED DUE PROCESS WHERE THE GUARDIAN ADLITEM FAILED TO FILE HER WRITTEN REPORT RECOMMENDING THE TERMINATION OF APPELLANT'S PARENTAL RIGHTS UNTIL THE FIRST DAY OF THE PERMANENT CUSTODY HEARING." *Page 5 
 VIII {¶ 18} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY CONSIDERING THE GUARDIAN AD LITEM'S WRITTEN REPORT FILED JUNE 4, 2007."
 I {¶ 19} Appellant claims the trial court lacked jurisdiction over the custody of Shelby because the child was returned to the parents in 1998. We disagree.
 {¶ 20} R.C. 2151.353(F) provides for a sunset provision on the issue of continuing agency custody:
 {¶ 21} "Any temporary custody order issued pursuant to division (A) of this section shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that, upon the filing of a motion pursuant to section 2151.415 of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section."
 {¶ 22} In In re: Young Children, 76 Ohio St.3d 632, 637, 1996-Ohio-45, the Supreme Court of Ohio addressed this issue as follows:
 {¶ 23} "Temporary custody is terminated upon the passing of the sunset date, when no motion is filed pursuant to R.C. 2151.415(A). However, the issue before us, what happens to the court's jurisdiction upon the passing of the sunset date, is not clear. Accordingly, we look elsewhere in the Revised Code to determine the jurisdiction of a court in situations like the ones before us. In doing so, we are guided by R.C. 2151.415(A), which states in pertinent part that Chapter 2151 of the Revised Code is to *Page 6 
be `liberally interpreted and construed so as to effectuate * * * the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code.' See, also, Kurtz Giannelli, Ohio Juvenile Law (2 Ed. 1989) 167, Section 13.01.
 {¶ 24} "R.C. 2151.353(E)(1) provides in pertinent part that `[t]he court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to division (A) of this section * * * until the child attains the age of eighteen * * * or the child is adopted.' It seems abundantly clear that this provision was intended to ensure that a child's welfare would always be subject to court review. That is, given that a child, by virtue of being before the court pursuant to R.C. Chapter 2151, was at risk of some harm, the General Assembly provided for the child's safety and welfare by ensuring that the juvenile court would retain jurisdiction over the child through the age of majority. R.C. Chapter 2151 places no limitation of this general jurisdiction."
 {¶ 25} Based upon the foregoing, we find the trial court had jurisdiction over Shelby's custody.
 {¶ 26} Assignment of Error I is denied.
 II, III, V {¶ 27} In these assignments of error, appellant challenges the trial court's decision to grant permanent custody of the children to appellee as being against the manifest weight of the evidence. As these assignments of error address the specific facts and testimony of the witnesses, we will address them collectively.
 {¶ 28} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Page 7 Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 29} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 {¶ 30} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 31} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents *Page 8 
for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 32} "(16) Any other factor the court considers relevant."
 {¶ 33} R.C. 2151.414(B)(1) specifically states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that is in the best interest of the child, as long as any of the following applies:
 {¶ 34} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 35} "(b) The child is abandoned.
 {¶ 36} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 37} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 38} The trial court specifically found the children had been in appellee's custody for twelve or more months of a consecutive twenty-two month period, and proceeded to the best interest test. Appellant argues because the children were not abandoned or orphaned, the focus should turn "to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents." Appellant's Brief at 16. We disagree with this interpretation of the statute. *Page 9 
 {¶ 39} A clear interpretation of the statute sets forth that once the "magic" time limits of subsection (B)(1)(d) have passed, a trial court may move to a best interest test. Under subsection (B)(1)(a), the child must not have been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. In the case sub judice, the trial court specifically found the children had been in appellee's temporary custody for twelve or more months of a consecutive twenty-two month period, therefore R.C. 2151.414(B)(1)(d) is applicable to the facts of this case, and appellant did not challenge the trial court's finding under said subsection. See, In re Canterucci Children, Stark App. No. 2006CA00144, 2006-Ohio-4969.
 {¶ 40} A review of the evidence presented in this case clearly points out why the legislature set forth the automatic provisions of R.C. 2151.414(B)(1)(d). The parents' case plan had been completed. They both took the required parenting classes (1-2-3 Magic) two times, and twice failed the tests for successful completion despite attempts to facilitate their special needs. T. at B-15-17, B-58-61. A third session was approved, but the parents did not pursue it. T. at B-17-19. During visitations, there was very little evidence of any follow-through from the classes, and the visits were chaotic. T. at B-19-20, B-75. The parents exhibited very little control over the children. T. at B-24-25. A stable job, a home, and budgeting skills were also required in the case plan. Father had a new job, appellant did not. T. at B-6-7. They appeared not to understand budgeting, and lost one home because they did not prioritize and pay their mortgage. T. at B-8-11. Also, their utilities were shut off because of budgeting issues. T. at B-10. *Page 10 
 {¶ 41} It was the opinion of two medical professionals, psychologist David Tennenbaum and clinical counselor Gail Campbell, Ph.D., that the parents were not able to resume parenting at the time of the hearing, and it was doubtful if they ever could, even with more time to complete the case plan. T. at A-11-13, A-19-20, A-21-22, A-67-68, A-75. "In light of this family's pattern, it appear the children will not benefit but are more likely to decompensate if visitation were to increase." T. at A-67-68; see also, T. at A-243.
 {¶ 42} Given this evidence, not only does subsection (B)(1)(d) apply, but it was also established that reasonable efforts and time have been expended on the case plan to fulfill the requirements of subsection (B)(1)(a).
 {¶ 43} As for best interests, R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 {¶ 44} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 45} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 46} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; *Page 11 
 {¶ 47} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 48} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 49} It was the general opinion of the experts and social workers that the children were in need of stability and consistency which the parents are unable to provide. T. at A-216. The children would decompensate with increased contact with the parents. T. at A-91. The children's difficult emotional issues would increase with each parental visit. T. at A-65-66. It was opined that neither parent was likely to significantly change. T. at A-19-20, A-39.
 {¶ 50} Although the children have emotional problems, the genesis of these problems began in the home. T. at A-128-129, A-159-160. The children have bonded with their foster parents, and want to live with them. T. at A-161, A-164. Elizabeth Coughenour, the children's licensed independent social worker, testified to the following:
 {¶ 51} "Although Brian and Jackie are, love their children and they are making every attempt to put themselves in a position where they can be stable and raise their children, these children don't have that time. They've got pretty sever psychotherapy needs. And the time restraints of their becoming stable in an environment and the time restraints of these children have to get treatment. Without all of the crisis going on. Its imperative and bottom line is I don't work for you, Children Services. You know, I'm getting a report together for the Judge. But the bottom line is these children are our clients and we as therapist in an agency have to do what we feel is best for them at the *Page 12 
time. Brian and Jackie were appropriate with the children. The children's behavior exasperated and became worse. It had nothing to do with Mariah and Jackie and their observation at the time. The children's behavior deteriorates over a period of time when they are with their biological parents. This is a deterioration that the children can't afford at this time because intervention with these kids, we are seeing some progression with these children that I've not seen a couple years. And I hate to see that go away." T. at A-243.
 {¶ 52} Upon review, we find the trial court did not err in granting permanent custody of the children to appellee.
 {¶ 53} Assignments of Error II, III, and V, are denied.
 IV {¶ 54} Appellant claims the trial court erred in admitting Dr. Campbell's expert opinion because the opinion was largely based upon a method that has not gained general acceptance in the scientific community (Kinetic Family Drawings). We disagree.
 {¶ 55} No objections to Dr. Campbell's qualifications or opinions were made at trial. Civil plain error is defined in Goldfuss v.Davidson, 79 Ohio St.3d 116, 1997-Ohio-401, syllabus, as "error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." The Goldfuss court at 121, explained the following:
 {¶ 56} "The plain error doctrine originated as a criminal law concept. In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost *Page 13 
caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings."
 {¶ 57} There are some fifty pages of cross-examination of Dr. Campbell. Her opinion was concurred by Dr. Tennenbaum and Ms. Coughenour.
 {¶ 58} Upon review, we do not find any plain error in admitting Dr. Campbell's expert opinion.
 {¶ 59} Assignment of Error IV is denied.
 VI, VII {¶ 60} Appellant claims the trial court erred in denying her motion to remove the guardian ad litem, and claims she was prejudiced because the guardian ad litem filed her report on the first day of the hearing. We disagree.
 {¶ 61} R.C. 2151.414(C) provides, "A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section or section 2151.35 of the Revised Code but shall not be submitted under oath." The guardian ad litem's report was timely filed on the day of the hearing.
 {¶ 62} Appellant argues the guardian ad litem was biased against the father, and failed to conduct an independent investigation. An examination of the transcript reveals the guardian ad litem was thoroughly cross-examined on these issues. The trial court was free to accept or reject the guardian ad litem's analysis and any perceived prejudice toward the parents. *Page 14 
 {¶ 63} Further, we find the guardian ad litem's report and testimony merely reflected the observations of the independent social workers. Any error or prejudice was outweighed by the substantiating evidence.
 {¶ 64} Assignments of Error VI and VII are denied.
 {¶ 65} The judgment of the Court of Common Pleas of Muskingum County, Ohio, Juvenile Division is hereby affirmed.
 Farmer, P.J. Wise, J. and Delaney, J. concur. *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio, Juvenile Division is affirmed. *Page 1