[Cite as *In re J.W.*, 2018-Ohio-2475.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| J.W., M.W., L.W., AND K.W., ABUSED, NEGLECTED AND DEPENDENT CHILDREN | : | |
| | : | **CASE NO. 2017-G-0139** |

Civil Appeal from the Geauga County Court of Common Pleas, Juvenile Division, Case No. 2014 JF 000213.

Judgment: Affirmed.

*James R. Flaiz*, Geauga County Prosecutor, and *Kelly M. Wallenfelsz*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Appellee, Geauga County Department of Job and Family Services).

*Gregory J. Wysin*, 2037 Brady Lake Road, Kent, OH 44240 (For Appellant, Alison Ward).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Alison Ward, appeals the September 19, 2017 judgment terminating her parental rights and granting permanent custody of her four minor children to the Geauga County Department of Job and Family Services ("GCDJFS"). We affirm.

{¶2} On June 10, 2014, GCDJFS filed a complaint alleging that appellant's children, J.W., M.W., L.W., and K.W., were neglected and dependent children and that

L.W. was also an abused child. The complaint alleged that in June of 2014, appellant was intoxicated and contacted the police seeking the removal of her children from the home. She had threatened the children causing them to be fearful for their safety. The police removed the children and placed them into temporary custody of GCDJFS. Appellant was arrested and charged with domestic violence.

{¶3} Dotty Ciciretto was appointed guardian ad litem ("GAL") for the children. On October 31, 2014, the children were adjudicated dependent and L.W. was also found to be abused. The children were placed together in a foster home in central Ohio, moved to a second in Geauga County, and finally a third in Bowling Green, Ohio.

{¶4} Appellant was convicted of attempted child endangering, and in October 2015, she violated the terms of her probation. Thereafter, she successfully completed treatment for alcohol addiction.

{¶5} In December of 2015, the children's father, James Ward, moved for legal custody of the children. He was represented by counsel at the time, but his attorney moved to withdraw in January of 2016 citing fundamental disagreements with her client's directives. The trial court granted counsel's motion to withdraw and noted in part, "the Court will not appoint a third free lawyer to father to pursue his private custody claim."

{¶6} On May 5, 2016, GCDJFS moved the court to grant legal custody of the children to their paternal aunt and uncle, Susan and Steven Manning ("the Mannings"). The children's father is listed on the certificate of service as residing in South Carolina. He did not file anything in opposition to this motion.

{¶7} Father also filed a motion for a Thanksgiving visit that states in part that he does not have a driver's license, but that he owns a four-bedroom home that he would like the children to visit and "see the home that they would be living in." The trial court

2

noted that it would address his motion for a Thanksgiving visit at the upcoming motions hearing.

{¶8} Thereafter, father moved for an eight-week continuance of the hearing explaining that he was physically unable to attend due to his physical injuries. He states he is unable to work, travel, and is "medicated" due to tremendous pain. He also moved for copies of all court records and another motion for court-appointed counsel on November 28, 2016. His motion for counsel was denied because he failed to complete the necessary paperwork and provide copies of his 2015 tax returns and 2016 pay stubs. The trial court also overruled father's motion for a continuance because he failed to provide anything from a doctor validating his injuries. Notwithstanding, the trial court permitted father to participate in the upcoming proceedings via Skype or telephone and ordered him to provide his current contact information to the court to facilitate his participation in the proceedings.

{¶9} At the December 5, 2016 hearing the trial court noted that father failed to appear and that it attempted to contact him via phone without success. Notwithstanding his absence, the trial court again considered his motions and found that he had not produced the necessary documentation to establish indigency for court-appointed counsel and likewise failed to provide the court with documentation verifying his injuries and inability to attend the court proceedings. Thus, his motions to continue and appointed counsel were denied.

{¶10} The parties present at the hearing agreed for legal custody of the children to be placed with the Mannings, finding in part:

{¶11} "The Court hereby finds that in the best interests of the children, legal custody of J.W., M.W., L.W., & K.W. is granted to Susan and Steven Manning effective

3

June 15, 2017. GCJFS shall continue to maintain temporary custody of J.W., M.W., L.W., & K.W. until June 15, 2017. GCJFS shall continue to maintain J.W., M.W., L.W., & K.W. in their current foster home placement with Mr. & Mrs. Brown through the end of the 2016-2017 schoolyear.

{¶12} "Marty Gelfand, counsel for [appellant], indicated that [she] wishes to withdraw her Motion for Dispositional Order Returning Children to mother at this time.

{¶13} "* * *

{¶14} "The Case Plan shall continue as previously Ordered.

{¶15} "[Appellant's] visitation with the children shall continue as previously Ordered.

{¶16} "The children shall continue to attend individual counseling services as recommended by their counselor(s).

{¶17} "GCJFS shall make a referral to initiate family counseling services for [appellant] and the children. GCJFS shall use its best efforts to facilitate ongoing family counseling for [appellant] and the children as recommended by the children's counselor(s) and the family counselor.

{¶18} "[Appellant] is permitted to exchange text messages with the children; said text messages are subject to monitoring by GCJFS and the foster parents."

{¶19} In this decision, the trial court likewise ordered all contact between the children and their father be suspended and ordered him to have no contact with appellant, the Mannings, or the foster parents. Father did not appeal this decision or file any other motions or pleadings after this December 2016 decision, and his last visitation with the children was approximately January of 2016.

4

{¶20} Pursuant to the foregoing, appellant communicated with the children via text messages. On January 31, 2017, appellant and J.W., the oldest child, engaged in a back and forth text communication during which appellant referred to continued phone calls she had been receiving from the GAL and complained of J.W.'s attitude. Appellant told J.W. she was glad she was not with her. The exchange ended after appellant stated: "you want to be an idiot I tried three and a half hours so you can be a b****," and appellant told J.W. that she would not be visiting the following weekend.

{¶21} Appellant contacted a GCDJFS case worker the following day indicating that she no longer wished to have visitation with the children because they had bad attitudes, were too critical of her, and showed her no respect. As a result, GCDJFS filed a motion to suspend contact. In March of 2017, the trial court suspended contact between appellant and her children, except in writing through greeting cards. Thereafter, appellant had a change of heart and filed three motions to restore supervised visitation.

{¶22} The two oldest children, J.W. and M.W., subsequently expressed concerns to the GAL that they do not want to live with the Mannings. However, the two youngest children, L.W. and K.W., still wanted to live with the Mannings. The GAL obtained letters from the children's case worker in which J.W. and M.W. expressed their wishes to remain in their Bowling Green foster home. The GAL attached the letters to her March 3, 2017 report. The GAL attempted to arrange a meeting with Mrs. Manning to discuss the fact that the two oldest children now wished to remain in foster care even though the trial court had already granted legal custody of all four to the Mannings.

{¶23} According to Mrs. Manning, beginning January 2017, she began feeling intimidated by the GAL and Attorney Jeffrey Orndorff, counsel for J.W., to step aside as legal custodians despite the fact that the trial court had already granted the Mannings

5

custody. At an April 4, 2017 meeting, which included representatives from GCDJFS, the GAL and Attorney Orndorff informed Mrs. Manning that if she and her husband stepped aside and decided not to accept legal custody of the children, GCDJFS would be left with no kinship placement. Thus, GCDJFS would have no choice but to file for permanent custody of the children.

{¶24} On April 18, 2017, appellant filed a motion to remove the GAL based on her unwillingness to follow the trial court's December 16, 2016 order granting legal custody to the Mannings.

{¶25} At an April 19, 2017 meeting with GCDJFS representatives, the Mannings informed them that they no longer wanted to serve as the children's legal custodians, given the statements of the two oldest children. On April 27, 2017, Attorney Orndorff filed a motion to modify placement and requested the trial court vacate its December 16, 2016 order.

{¶26} Following a status hearing, the trial court granted appellant's motion to remove the GAL and appointed two new GALs, one for the two older children and another for the two younger ones. On May 24, 2017, appellant filed a motion requesting a dispositional order returning the children to her. The GCDJFS also filed a motion requesting permanent custody of all four children. On June 30, 2017, the court vacated its December 16, 2016 judgment granting legal custody to the Mannings.

{¶27} Following a permanent custody hearing in August of 2017, the trial court granted GCDJFS's motion for permanent custody on September 19, 2017. Neither father nor his representative appeared at the hearing. The trial court found he abandoned the children, and he is not a party to this appeal.

{¶28} Appellant raises four assignments of error:

6

{¶29} "[1.] The trial court committed reversible, plain error by acting outside the bounds of its jurisdiction when it extended temporary custody of the children to the Geauga County Department of Job and Family Services beyond the two-year limitation mandated by R.C. 2151.415(D)(4) in its judgment issued December 16, 2016.

{¶30} "[2.] The trial court committed plain, reversible error by acting outside the bounds of its jurisdiction when it proceeded to entertain custodial motions after it had ostensibly vacated its December 16, 2016 judgment entry granting legal custody to the Mannings, and failed to return the children into either their mother's custody, or into the legal custody of the Mannings.

{¶31} "[3.] The court committed reversible error when it found that the Geauga County Department of Job and Family Services had engaged in reasonable case planning and diligent efforts to assist Ms. Ward in repairing her relationships with her children and to finalize permanency for the children after those efforts were subverted by a rogue GAL, acting beyond the scope of her appointment, and assisted by the children's counsel.

{¶32} "[4.] The court committed reversible error when it permitted counsel for the Department of Job and Family Services to prosecute the permanent custody motion despite the fact that the same attorney had previously represented mother during the pendency of the proceedings pursuant to an indigent court appointment."

{¶33} "[I]t is well established that a parent's right to raise a child is an essential and basic civil right. *In re Hayes* (1997), 79 Ohio St.3d 46, 48 * * *. The permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case. *In re Hoffman*, 97 Ohio St.3d 92, * * * 2002-Ohio-5368, at ¶14. See, also, *In re Smith* (1991), 77 Ohio App.3d 1, 16 * * *. Based upon these principles, the Ohio Supreme Court has determined that a parent 'must be afforded every procedural

7

and substantive protection the law allows.' (Citation omitted.) *Hayes* at 49." (Parallel citations omitted.) *In re Phillips*, 11th Dist. Ashtabula No. 2005-A-0020, 2005-Ohio-3774, ¶22.

**{¶34}** Appellant's first and second assigned errors assert plain error based on the trial court's issuance of a dispositional order beyond the court's authority to do so based on the "sunset provision" in R.C. 2151.353 and 2151.415.

**{¶35}** "[I]n order for a court to find plain error in a civil case, an appellant must establish (1) a deviation from a legal rule, (2) that the error was obvious, and (3) that the error affected the basic fairness, integrity, or public reputation of the judicial process, and therefore challenged the legitimacy of the underlying judicial process." *State v. Morgan*, _Ohio St.3d _, 2017-Ohio-7565, ¶40, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). "As when they apply criminal plain-error review, reviewing courts applying civil plain-error review 'must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice.'" *Id.*

**{¶36}** R.C. 2151.353(G), "Disposition of abused, neglected, or dependent child," commonly referred to as the sunset provision, states in part:

**{¶37}** "Any temporary custody order issued pursuant to division (A) of this section *shall* terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that, upon the filing of a motion pursuant to section 2151.415 of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section." (Emphasis added.)

8

**{¶38}** R.C. 2151.415(D)(1) permits a trial court to grant an extension of temporary custody of up to six months. However, R.C. 2151.415(D)(4) states:

**{¶39}** "No court *shall* grant an agency more than two extensions of temporary custody pursuant to division (D) of this section and the court *shall* not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of this section." (Emphasis added.)

**{¶40}** As argued by appellant, a plain reading of the statutory language makes the timing of the dispositional order following a motion mandatory. R.C. 2151.353(G). Consistent with a plain reading of the statute, in 1995 this court held in part that a court that fails to issue a dispositional order within this mandatory timeframe lacks authority to do so absent the filing of a new complaint. *In re Omosun Children,* 106 Ohio App.3d 813, 820-21, 667 N.E.2d 431 (11th Dist.1995). And because there was also a due process violation because of the trial court's 28-month delay in issuing the dispositional order *after* the dispositional hearing concluded, reversal was warranted. *Id.* at 831-822. We held "[t]he combination of the trial court's failure to comply with the seven-day requirement of R.C. 2151.35(B)(3) and the failure of the court to render its decision with the two-year limit of temporary custody resulted in a clear denial of appellant's right to due process of law." *Id.*

**{¶41}** However, *"Omosun* has been overruled by * * * *In re Davis* (1999), 84 Ohio St.3d 520, 705 N.E.2d 1219, where the Court specifically addressed an appeal that had been certified as being in conflict with *Omosun." In re K.H.,* 5th Dist. Licking No. 13-CA-100, 2014-Ohio-1594, ¶17. The Supreme Court in *Davis* found the seven-day

9

requirement directory, not mandatory such that failure to comply does not affect a court's jurisdiction. *Davis* at 523.

{¶42} Moreover, in 1996 the Ohio Supreme Court held that a trial court does *not* lose jurisdiction to enter custody orders after the expiration of the statutory time periods in R.C. 2151.415(D) and 2151.353. *In re Young Children,* 76 Ohio St.3d 632, 669 N.E.2d 1140 (1996) syllabus.

{¶43} In 2012, this court addressed this issue again and applied the *Young Children* holding, explaining:

{¶44} "In *In re Young Children, * * * the Supreme Court of Ohio addressed the question of whether a juvenile court loses jurisdiction to enter dispositional orders upon expiration of the 'sunset' date pursuant to R.C. 2151.353(F) [now subsection (G)]; the court answered it in the negative. *Id.* at 636–637. *When the sunset date expires, the juvenile court retains jurisdiction over the child and may make further dispositional orders as it deems necessary to protect the child. In re R.A.,* 172 Ohio App.3d 53, 2007-Ohio-2997 (3d Dist.), citing *In re Young* at 638.

{¶45} "[S]uch a holding 'allows the juvenile court to assess each situation on its merits, and does not mandate the return of children to a situation from which they originally needed protection solely because the agency charged with their care missed a filing deadline.' *In re Young* at 638. The court therefore concluded that 'when the sunset date has passed without a filing pursuant to R.C. 2151.415 and the problems that led to the original grant of temporary custody have not been resolved or sufficiently mitigated, courts have the discretion to make a dispositional order in the best interests of the child.' *Id.*" (Emphasis added.) *In re A.L.W.,* 11th Dist. Portage Nos. 2011-P-0050, 2011-P-0051, and 2011-P-0052, 2012-Ohio-1458, ¶58-59; *In re E.M.*, 8th Dist. Cuyahoga No. 79249,

10

2001 WL 1400022, *7 (finding *Omosun* overruled by *In re Young*); *In Matter of Lewis,* 4th Dist. Athens Nos. 96CA1760 and 96CA1763, 1997 WL 217573, *3; *see also In re Hess,* 7th Dist. Jefferson No. 02JE37, 2003-Ohio-1429, ¶40 (finding parties may file a writ of procedendo to enforce the statutory time requirements, but cannot establish prejudice because the provisions do not afford a remedy).

{¶46} Thus, because appellant's problems that led to the original grant of custody of the children to GCDJFS have not been resolved, the trial court retained discretion and authority to render the September 19, 2017 decision permanently terminating her parental rights. While the trial court found that appellant is addressing her issues with alcoholism, it also found that her mental abuse of the children was ongoing. Appellant's February 2017 text messages to the children demonstrate that she continues to blame the children for her problems and continues her destructive verbal abuse toward them.

{¶47} Thus, appellant's first and second assigned errors lack merit since the trial court continued to have jurisdiction to issue a dispositional order in the best interest of the children.

{¶48} In her third assigned error, appellant asserts the trial court erred in finding that GCDJFS had engaged in reasonable case planning and diligent efforts to assist her in repairing her relationships with her children and to finalize permanency for the children after those efforts were subverted by a rogue GAL, acting beyond the scope of her appointment, and assisted by the children's counsel. We disagree.

{¶49} As alleged, the trial court found that the children's prior GAL acted inappropriately by conveying the two older children's wishes that they did not want to reside with the Mannings. Consequently, the Mannings eventually withdrew their request

11

for custody even though custody had already been awarded to them, but had not yet become effective.

**{¶50}** The Manning's withdrawal of their custody request, however, does not establish that GCDJFS failed to make reasonable efforts to make it possible for the children to return home. As found by the trial court, GCDJFS was not complicit in this conduct, and instead attempted to maintain the grant of custody to the Mannings to no avail.

**{¶51}** R.C. 2151.419(A)(1) provides that when a child is removed from a home or continues to be removed, the children services agency must show it made "reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home."

**{¶52}** However, "R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶43.

**{¶53}** Here, GCDJFS moved for permanent custody pursuant to R.C. 2151.413(D)(1) because the children had been in its custody for 12 or more months of a consecutive 22-month period, and as such, the trial court did not have to assess the reasonable efforts put forth by GCDJFS at the permanent custody hearing. *Id.* Notwithstanding, the court found in its decision granting permanent custody that GCDJFS made reasonable efforts to reunify the family. It found GCDJFS provided mental health counseling, drug and alcohol assessments, and follow-up recommendations.

**{¶54}** "[T]he state must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights[,]" and, "[i]f the

12

agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.*; *In re Lambert*, 11th Dist. Geauga No. 2007-G-2751, 2007-Ohio-2857, ¶59-62.

{¶55} The trial court also issued several prior decisions in which it found the agency made reasonable efforts. In its entries dated February 11, 2016, May 5, 2016, and October 26, 2016, it finds GCDJFS's reasonable efforts included case supervision, supervised visitations, drug and alcohol assessments, and counseling.

{¶56} Thus, appellant's third assigned error lacks merit and is overruled.

{¶57} In her fourth assignment of error, appellant claims reversible error based on a violation of her Sixth Amendment Right to conflict-free assistance of counsel. She contends the trial court erred in permitting Donovan DeLuca, counsel for GCDJFS, to prosecute the permanent custody motion even though he had previously represented appellant during the pendency of the proceedings pursuant to court appointment.

{¶58} Attorney DeLuca was appointed by the trial court on August 4, 2014 as appellant's co-counsel along with the Geauga County Assistant Public Defender, Colleen R. Del Balso, to represent her at an adjudicatory hearing set seven days later, August 11, 2014. The next day, August 5, 2014, the Geauga County Assistant Public Defender moved for leave to withdraw as counsel for appellant. For cause, Del Balso details her efforts to meet with appellant, and appellant's responses in which she cancels the prescheduled meetings. Del Balso also advises the court of appellant's repeated statements that she is hiring Attorney Paul Mooney to represent her. The trial court granted Del Balso's motion on the same day it was filed. Attorney Paul Mooney filed his notice of appearance for appellant, a motion for discovery, and a motion to continue the adjudicatory hearing on August 7, 2014. Attorney DeLuca is not listed as co-counsel and

is likewise not listed in the certificate of service. The trial court granted appellant's motions on August 8, 2014 and does not list Attorney DeLuca as an attorney receiving a copy of the judgment via Civ.R. 58(B). On August 13, 2014, the trial court sua sponte "dismisses" Attorney DeLuca as appellant's attorney.

{¶59} There are no pleadings filed on appellant's behalf by Attorney DeLuca, and appellant does not direct our attention to any resulting prejudice from DeLuca's limited appearance. She did not object or argue that a conflict existed on this basis during the trial court proceedings.

{¶60} In *State v. Gillard*, 64 Ohio St.3d 304, 595 N.E.2d 878 (1992), the Supreme Court addressed a comparable issue in a criminal appeal during which defense counsel represented co-defendants at a preliminary hearing and then represented one of them in the trial, even though the other eventually testified on behalf of the defense. The Supreme Court held that there was a clear *possibility* of a conflict of interest and that the trial court knew or should have known that a possible conflict of interest existed that could have affected counsel's representation. In addressing the issue, *Gillard* differentiated between an actual and a possible conflict of interest:

{¶61} "[W]here a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists. The duty to inquire arises not only from the general principles of fundamental fairness, but from the principle that where there is a right to counsel, there is a correlative right to representation free from conflicts of interest. * * * Where a trial court breaches its affirmative duty to inquire, a criminal defendant's rights to counsel and to a fair trial are impermissibly imperiled and prejudice or 'adverse effect' will be presumed. * * *

14

**{¶62}** "Although we cannot be sure that an actual conflict of interest existed, there is a clear possibility of conflict of interest on the facts of this case. We find that the trial court knew (or at *least* should have known) that a possible conflict of interest existed which could affect [counsel's] representation of appellant. * * * The trial court was constitutionally required to conduct an inquiry into the possible conflict of interest to determine whether *appellant* had received, and would receive, the right to conflict-free counsel guaranteed him by the Sixth Amendment to the United States Constitution.

**{¶63}** "* * *

**{¶64}** "[W]e remand the cause to the trial court with instructions to conduct a hearing to determine whether an actual conflict of interest existed in counsel's representation of appellant. If, upon remand, the trial court finds that an actual conflict of interest existed, the trial court is hereby ordered to conduct a new trial free from conflicts of interest." *Id.* at 311-312.

**{¶65}** As in *Gillard*, supra, we found that a *possible* conflict of interest is apparent because DeLuca "represented" both appellant and GCDJFS during the same proceedings. Thus, consistent with *Gillard*, we remanded for a hearing for the trial court to ensure that appellant received conflict-free representation. *In re: J.W., M.W., L.W., and K.W.,* 11th Dist. Geauga No. 2017-G-0139, 2018-Ohio-2020.

**{¶66}** On remand the trial court found no actual conflict of interest. Its finding is consistent with the testimony of Attorney Deluca and appellant, who testified at the hearing on remand.

**{¶67}** During the hearing appellant confirmed that she had never met Attorney Deluca and that she had no contact with him during the limited period he was appointed to represent her. In fact, she testified that she had not even received notice that he was

15

appointed to represent her.  Attorney DeLuca likewise confirmed that he never met with appellant, did not file a notice of appearance on her behalf, and did no work on her behalf.

{¶68}  Because the evidence shows no actual conflict of interest, a new permanent custody hearing is not required.  Thus, appellant's fourth assignment of error lacks merit.

{¶69}  The trial court's decision is affirmed.


CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.