OPINION
{¶ 1} Appellants, Brian W. and Diana Roberts, appeal the decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of a minor child to appellee, Clermont County Department of Job and Family Services ("CCDJFS").
 {¶ 2} Brian W. is the biological father of A.W., and the child's biological mother is not a party to this appeal. On March 3, 2005, CCDJFS filed a motion alleging A.W. to be *Page 2 
neglected after receiving a complaint that the child was found in a crib lying in her own feces and urine. On that day, the juvenile court awarded CCDJFS predispositional temporary custody of the child. On May 5, 2005, the trial court adjudicated the child dependent, and continued its previous temporary custody order. Apparently, CCDJFS developed a case plan to reunify the child with her parents, but the case plan itself is not in the record.
 {¶ 3} The juvenile court granted two extensions of temporary custody to CCDJFS on January 12, 2006 and June 6, 2006.
 {¶ 4} On November 2, 2006, CCDJFS moved for permanent custody of the child, alleging that granting CCDJFS permanent custody of the child is in her best interest, and that the child has been in the temporary custody of CCDJFS for more than 12 consecutive months prior to the filing of the motion.
 {¶ 5} On March 14, 2007, Diana Roberts, who is a friend of Brian W., filed a petition for legal custody of the child.
 {¶ 6} After a bifurcated hearing on both CCDJFS's motion for permanent custody and Diana's petition for legal custody, the juvenile court magistrate granted CCDJFS's motion and denied Diana's petition. Appellants objected to the magistrate's decision, and the juvenile court overruled the objections and affirmed the magistrate's decision in its entirety.
 {¶ 7} Appellants separately appeal the juvenile court's decision, raising the following assignments of error. For the purpose of discussion, we address appellants' assignments of error together and out of order.
 {¶ 8} Appellant Diana Roberts' Assignment of Error No. 1:
 {¶ 9} "THE JUVENILE COURT FAIL [sic] TO ACCORD DIANA ROBERT [sic] DUE PROCESS RIGHTS AND LAWFULLY DETERMINE THE APPROPRIATENESS OF TERMINATION OF PARENTAL RIGHTS WHEN IT RELIED ON A SUBSTANTIAL AMOUNT *Page 3 
OF UNFOUNDED AND OBJECTED TO HEARSAY TESTIMONY IN DETERMINING THAT THE CLERMONT COUNTY DEPARTMENT OF JOB FAMILY SERVICES HAD MET THE BURDEN IMPOSED ON IT BY R.C. 2151.414."
 {¶ 10} Appellant Brian W.'s Assignment of Error No. 2:
 {¶ 11} "THE TRIAL COURT DECISION TO TERMINATE APPELLANT'S PARENTAL RIGHTS WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 {¶ 12} Initially, we address the first issue presented in Diana's first assignment of error, where she argues that the juvenile court impermissibly relied on hearsay testimony in granting CCDJFS's motion for permanent custody.
 {¶ 13} Juv. R. 34(B)(2) provides, "[e]xcept as provided in division (I) of this rule, the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence[.]" The exception to this rule in Juv. R. 34(I) states, in relevant part, "[t]he Rules of Evidence shall apply in hearings on motions for permanent custody."
 {¶ 14} At the hearing, Erica Boller, supervisor of foster care for CCDJFS, testified as to the progress Diana made with the home study she requested through CCDJFS as a part of her attempt to obtain custody of A.W. When asked by CCDJFS's counsel whether Diana had completed the home study, Boller stated that she had not. Counsel then asked Boller why the home study is incomplete, and Boller replied that there were several "red flags," including negative personal and school references. Boller elaborated by saying that she had concerns that Diana lacks insight with regard to the needs of her own biological children, and therefore was concerned with her ability to care for A.W. Diana objected to this explanation, and argued that this is hearsay testimony.
 {¶ 15} In response to Diana's objection, the juvenile court magistrate stated: *Page 4 
 {¶ 16} "Well, number one, if it were hearsay, it [is] admissible at this point in consideration [of] the best interests of the child. Secondly, I don't even know if it's reached that point. At this point * * * [Boller is] discussing the background for [her] conclusions. You're welcome to raise it again. Obviously I'm attuned to * * * the accuracy of the testimony in terms of the declarant being there. But at this point in the proceeding, hearsay is admitted and obviously in all points I'm considering the fact that some of the testimony [that] is coming out here * * * [is] without the benefit of cross-examination * * *."
 {¶ 17} It is important to note that this appeal is from a bifurcated hearing on both CCDJFS's motion for permanent custody of the child and Diana's petition for legal custody of the child. The record reflects that this testimony was provided at the legal custody portion of the hearing. Accordingly, we find the juvenile court properly applied Juv. R. 34(B)(2) in admitting this testimony, whether or not the testimony is hearsay.
 {¶ 18} Next, both Brian and Diana argue that the juvenile court's decision granting permanent custody to CCDJFS is not supported by sufficient clear and convincing evidence.
 {¶ 19} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v.Kramer (1982), 455 U.S. 745, 759, 102 S.Ct. 1388. An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. In re Starkey, 150 Ohio App.3d 612,2002-Ohio-6892, ¶ 16. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In re Rodgers
(2000), 138 Ohio App.3d 510, 520.
 {¶ 20} R.C. 2151.414(B) requires the juvenile court to apply a two-part test when *Page 5 
terminating parental rights and awarding permanent custody to a children services agency. Specifically, the court must find that: 1) the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D); and, 2) any of the following apply: the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; the child is abandoned; the child is orphaned; or the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(a), (b), (c) and (d); In re Schaefer,111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 31-36; In re Ebenschweiger, Butler App. No. CA2003-04-080, 2003-Ohio-5990, ¶ 9.
 {¶ 21} The juvenile court found by clear and convincing evidence, and appellant does not dispute, that A.W. is dependent and had been in the temporary custody of CCDJFS for more than 12 months of a consecutive 22-month period as of the date CCDJFS filed the permanent custody motion. However, appellant does dispute the juvenile court's finding that granting permanent custody is in the best interest of the children.
 {¶ 22} Accordingly, we must determine whether there was clear and convincing evidence that granting the motion for permanent custody was in the child's best interest.
 {¶ 23} R.C. 2151.414(D) provides that in considering the best interest of a child in a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to the following:
 {¶ 24} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 25} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; *Page 6 
 {¶ 26} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 27} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 28} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 29} Specifically, appellants challenge the juvenile court's finding that the child's need for a legally secure permanent placement cannot be achieved without granting permanent custody to CCDJFS. After reviewing the record, we find sufficient, credible evidence supports the juvenile court's finding.
 {¶ 30} According to the testimony of Brook Lorthioir, a case worker for CCDJFS, Brian's case plan required him to obtain and maintain stable housing and employment, complete a psychological evaluation, mental health treatment, and a parenting course. Lorthioir further testified that while Brian completed the psychological evaluation, mental health treatment, and parenting course, he failed to obtain stable housing and employment. Also, Lorthioir stated that Brian has participated very consistently in visitations and that he and the child are bonded. However, Lorthioir recommended to the court that CCDJFS be granted permanent custody of the child because there are problem's with Brian's insight and decision-making with regard to the child's safety, and because Brian failed to obtain stable housing and employment despite having over two years to do so. Lorthioir was also concerned that Brian had been involved in multiple instances of domestic violence.
 {¶ 31} As previously discussed, Boller testified at the hearing with regard to Diana's *Page 7 
progress in the home study conducted by CCDJFS, and stated that the home study was not complete because Diana did not undergo a psychological evaluation. While the record does indicate that Diana has completed foster care training and has generally cooperated with the home study, there are also concerns that she is not able to meet the needs of her own biological children. As the juvenile court indicated, Diana's attempt to obtain temporary custody of the child and her progress in reaching that goal is noteworthy. However, Diana's efforts do not supersede the child's need for legally secure permanent placement, which cannot be achieved without granting permanent custody to CCDJFS.[1]
 {¶ 32} In finding that legally secure permanent placement of the child cannot be achieved without granting permanent custody to CCDJFS, the juvenile court thoroughly analyzed the evidence and testimony from the permanent custody hearing, and its finding is supported by sufficient clear and convincing evidence. In our role as an appellate court reviewing a decision granting permanent custody, we neither weigh the evidence nor assess the credibility of the witnesses, but instead determine whether there is sufficient clear and convincing evidence to support the juvenile court's decision. See In re Dunn, Tuscarawas App. No. 2008AP030018, 2008-Ohio-3785.
 {¶ 33} Appellants have not challenged the remaining findings of the juvenile court pursuant to R.C. 2151.414(D). However, these findings are likewise supported by sufficient, credible evidence. Diana's first assignment of error and Brian's second assignment of error are overruled.
 {¶ 34} Appellant Brian W.'s Assignment of Error No. 1:
 {¶ 35} "THE TRIAL COURT LACKED SUBJECT MATTER JURISDICTION TO *Page 8 
DETERMINE THIS MOTION FOR PERMANENT CUSTODY."
 {¶ 36} In his first assignment of error, Brian argues that the juvenile court did not have jurisdiction to decide CCDJFS's motion for permanent custody, as the juvenile court's last extension of temporary custody expired before CCDJFS filed its motion for permanent custody. Appellant maintains that the juvenile court was divested of jurisdiction upon the expiration of the final extension of temporary custody (the "sunset date") pursuant to R.C. 2151.353(F).
 {¶ 37} R.C. 2151.353(A)(2) provides, [i]f a child is adjudicated an abused, neglected, or dependent child, the court may * * * [c]ommit the child to the temporary custody of a public children services agency * * *."
 {¶ 38} Further, R.C. 2151.353(F) provides that, "[a]ny temporary custody order issued pursuant to division (A) of this section shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that, upon the filing of a motion pursuant to [R.C. 2151.415], the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section."
 {¶ 39} R.C. 2151.415(A)(1) provides:
 {¶ 40} "Except for cases in which a motion for permanent custody described in [R.C. 2151.413(D)(1)] is required to be made, a public children services agency or private child placing agency that has been given temporary custody of a child pursuant to [R.C. 2151.353], not later than thirty days prior to the earlier of the date for the term ination of the custody order pursuant to division [R.C. 2151.353(F)] or the date set at the dispositional hearing for the hearing to be held pursuant to this section, shall file a motion with the court that issued the order of disposition requesting that any of the following orders of disposition of the child be *Page 9 
issued by the court:
 {¶ 41} "(1) An order that the child be returned home and [sic] the custody of the child's parents, guardian, or custodian without any restrictions;
 {¶ 42} "(2) An order for protective supervision;
 {¶ 43} "(3) An order that the child be placed in the legal custody of a relative or other interested individual;
 {¶ 44} "(4) An order permanently terminating the parental rights of the child's parents;
 {¶ 45} "(5) An order that the child be placed in a planned permanent living arrangement;
 {¶ 46} "(6) In accordance with [2151.415(D)], an order for the extension of temporary custody."
 {¶ 47} Further, R.C. 2151.415(D)(1) provides:
 {¶ 48} "If an agency pursuant to [2151.415(A)] requests the court to grant an extension of temporary custody for a period of up to six months, the agency shall include in the motion an explanation of the progress on the case plan of the child and of its expectations of reunifying the child with the child's family, or placing the child in a permanent placement, within the extension period. * * * The court may extend the temporary custody order of the child for a period of up to six months, if it determines at the hearing, by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension. * * *"
 {¶ 49} Additionally, 2151.415(D)(2) provides:
 {¶ 50} "Prior to the end of the extension granted pursuant to [2151.415(D)(1)] the *Page 10 
agency that received the extension shall file a motion with the court requesting the issuance of one of the orders of disposition set forth in [2151.415(A)(1) to (5)] or requesting the court to extend the temporary custody order of the child for an additional period of up to six months."
 {¶ 51} According to the record, CCDJFS moved to extend temporary custody on January 9, 2006, and the juvenile court granted that motion and extended temporary custody to June 6, 2006. One day before the termination of the first six-month extension of temporary custody, CCDJFS filed a second motion to extend temporary custody. Although CCDJFS requested the second six-month extension, which would have extended temporary custody into December 2006 if granted, the juvenile court only extended temporary custody to October 31, 2006. Two days after the expiration of the second temporary custody extension, on November 2, 2006, CCDJFS moved for permanent custody of the child.
 {¶ 52} CCDJFS argues that it was entitled to the entire six-month extension, and that the juvenile court's extension of temporary custody to only October 31, 2006 was a clerical error. CCDJFS maintains it was entitled to the full six-month extension. However, as quoted above, upon the filing of a motion for a second extension of temporary custody, 2151.415(D)(2) permits a "court to extend the temporary custody order of the child for an additional period of up to six months." (Emphasis added.) Without any further explanation by the juvenile court for reaching this decision, or a nunc pro tunc corrective entry, we must presume the court intended the order of temporary custody to expire on the date specified its entry.
 {¶ 53} Nevertheless, the Ohio Supreme Court held, in In re YoungChildren, 76 Ohio St.3d 632, 637, 1996-Ohio-45, "the passing of the sunset date pursuant to R.C. 2151.353(F) does not divest juvenile courts of jurisdiction to enter dispositional orders." "[W]hen the *Page 11 
sunset date has passed without a filing pursuant to R.C. 2151.415 and the problems that led to the original grant of temporary custody have not been resolved or sufficiently mitigated, courts have the discretion to make a dispositional order in the best interests of the child. Where the original problems have been resolved or sufficiently mitigated, courts may not make further dispositional orders based on the original complaint." Id. at 638.
 {¶ 54} The juvenile court found in its decision that appellant has failed to substantially remedy the conditions causing the child to be placed outside the home, and we find that the record supports this conclusion. Accordingly, because the original problems that caused the child to be removed from the home have not been resolved, the juvenile court maintained jurisdiction to enter a dispositional order. Brian's first assignment of error is overruled.
 {¶ 55} Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.
[1] We note, as did the juvenile court, that granting CCDJFS's motion for permanent custody does not necessarily prevent Diana from continuing the process of being approved for foster care and licensed to adopt. *Page 1